## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JANE DOE<br>[Location Redacted]<br><br>Plaintiff,<br><br>v.<br><br>SAFWAT HASSAN SIDDIG<br>14554 Bisbee Court<br>Woodbridge, VA 22193<br><br>KAWTHAR HASSAN SULIMAN<br>A.K.A. KAWTHAR SIDDIG<br>14554 Bisbee Court<br>Woodbridge, VA 22193<br><br>Defendants. | Case No.1:10-cv-01256 (CKK)<br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

Jane Doe, by and for her Complaint in the above-captioned matter, alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff Jane Doe (hereinafter "Ms. Doe" or "Plaintiff")[1] was trafficked for forced labor into the United States by Defendants Safwat Hassan Siddig (hereinafter "S. Siddig") and Kawthar Hassan Suliman A.K.A. Kawthar Siddig (hereinafter "K. Siddig") (collectively, "Defendants") at the age of fourteen.  The Defendants falsely imprisoned Ms. Doe and subjected her to forced labor and involuntary servitude, all in violation of international, federal, and state law.

---

[1] Due to the sensitive nature of this case, and the heightened privacy interests involved, Plaintiff sought and was granted temporary leave to proceed under a pseudonym.

2.      For nineteen years, from 1990 until 2009, Defendants forced Ms. Doe to work as a domestic servant and nanny in their home.  Defendants forced Ms. Doe to work seven days a week.  She received no breaks for vacation or sick leave.

3.      For approximately the first ten years of forced labor in the Defendants' home, the Defendants paid Ms. Doe one hundred dollars a month, or just over three dollars a day.  Around 1999 or 2000, the Defendants paid her $150 a month.  Beginning around 2006, the Defendants paid her two hundred dollars a month.  Typically, Ms. Doe was only paid 50 percent of these wages, and she was told that the remaining 50 percent was sent to her family back in Sudan.

4.      The Defendants trafficked Ms. Doe into the United States using fraudulent travel documents.  The Defendants or their agents misrepresented Ms. Doe's age on her passport application and on the A-3 visa request submitted to the U.S. Consulate.  The Defendants or their agents falsely stated on these documents that Ms. Doe was an adult when, in reality, she was a minor of only fourteen years of age at the time she entered the United States.

5.      The Defendants induced and deceived Ms. Doe's family into permitting her to travel to the United States by promising Ms. Doe and her family that she would attend school. Defendants promised that they would raise her like their own child.  Instead, Defendants refused to allow Ms. Doe to attend school as a child in the United States and forced her to work as a nanny and domestic servant in their home.

6.      Defendants promised Ms. Doe and her family that Ms. Doe would be able to return home to visit her family regularly.  Instead, Ms. Doe was permitted to leave the country only on two occasions, in 1996 and 2008.  During the 1996 trip, Ms. Doe accompanied the Defendants on a family vacation to Saudi Arabia and Sudan.  Ms. Doe was forced to take care of

the Siddig children while the parents visited religious sites on Hajj.  Ms. Doe was not permitted to visit the religious sites.

7.     Immediately upon her arrival in the United States, the Defendants confiscated Ms. Doe's passport and deceived her about her immigration status.  Defendants isolated Ms. Doe from the outside world, refusing to allow her to attend school or speak with her family.  When she became ill, the Defendants negligently failed to obtain prompt medical treatment.  When she developed serious dental problems, the Defendants negligently failed to take her to a dentist.

8.     Ms. Doe seeks damages and restitution for unpaid wages, damages for being trafficked into the United States, and damages for breach of contract and various state torts.

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1351, and 29 U.S.C. § 216(b).  This Court has supplemental jurisdiction over Ms. Doe's state-law claims pursuant to 28 U.S.C. § 1367.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(d).

## PARTIES

10.     Plaintiff Jane Doe is a thirty-four-year-old citizen of Sudan, currently residing in the United States.  At the time of the events that gave rise to this Complaint, Ms. Doe was legally residing in the United States under an A-3 Non-Immigrant Visa and later under another immigration status, both of which were arranged by the Defendants.

11.     At all times relevant hereto, Defendant S. Siddig was stationed in Washington, D.C. as an official and/or employee at the Sudanese Embassy.  Defendant S. Siddig resided with his wife, Defendant K. Siddig, and their children at 14554 Bisbee Court in Woodbridge, Virginia.

3

## FACTUAL ALLEGATIONS

### The Defendants' Fraudulent Actions Leading to Plaintiff's Recruitment Into Forced Labor

12.     Before Defendants trafficked her into the United States at the age of only fourteen, Ms. Doe was a primary school student.  At the time of her departure to the United States, she had recently completed the sixth grade.  She was living with her close-knit family in Sudan.

13.     Defendant S. Siddig deceived Ms. Doe and her family into allowing him to bring her to the United States by falsely promising that Ms. Doe would attend school in the United States and that she would be raised like a daughter.  Defendant S. Siddig claimed that all Ms. Doe would have to do was help take care of his two disabled children, who were a few years younger than Ms. Doe.  Over the nineteen-year period in the Siddig home, Ms. Doe cared for two additional children of the Defendants who were born in the United States after Ms. Doe's arrival in 1990.

14.     Defendant S. Siddig drafted and executed a contract for Ms. Doe to serve as a nanny and domestic servant for the Defendants in the United States.  The contract stated that Ms. Doe would be paid at least the federal statutory minimum wage for all time worked, with payments to be divided 50 percent to Ms. Doe and 50 percent to her parents in Sudan.

15.     Upon information and belief, this written contract was presented to consular officials at the U.S. Embassy in Sudan in order to obtain the A-3 visa.

16.     Defendant S. Siddig or his agents fraudulently made arrangements to misrepresent Ms. Doe's age on her visa and passport applications so that she would appear to be an adult and therefore be eligible for a visa.

**The Defendants' Forced Labor and Exploitation of Ms. Doe in the United States**

17.     Seven days a week, starting early in the morning, the Defendants forced Ms. Doe to clean their entire townhouse from top to bottom, wash and iron clothing for the Defendants and their children, wash dishes by hand, mop floors, cook meals, clean up after meals, and prepare the children for bed.  Ms. Doe was required to take care of the Siddig children who, during this time period, ranged from infants to adult disabled children.  At various times, Ms. Doe was also charged with caring for additional children, including the Defendants' various nieces and nephews who were either staying with the Defendants or lived in the area.

18.     In addition to the daily work, weekends brought significantly more chores for Ms. Doe because Defendants were home all day and demanded her constant attention.  The Defendants also often invited guests to their house for the weekend or even for weeks at a time.  The Defendants ordered Ms. Doe to be the guests' servant and to complete various chores for them.

19.     Ms. Doe was forced to work on holidays and received no days off.  The Defendants demanded that she work extra hours when they were hosting guests in their home.

20.     The Defendants required Ms. Doe to use harsh cleaning chemicals that burned her skin.  The chemicals caused Ms. Doe to develop scars, rashes, and peeling skin that continue to disfigure her hands and feet today.

**The Defendants' Abuse of Ms. Doe**

21.     In addition to making Ms. Doe work or to be available to work around the clock, the Defendants subjected her to constant verbal and psychological abuse.

22.     Any time that Ms. Doe failed to meet the Defendants' unreasonable demands or whenever anything went wrong in the house, the Defendants yelled at her, humiliating and shaming her.

23.     The Defendants' abuse has caused lasting harm.  Ms. Doe frequently has nightmares of K. Siddig's voice screaming at her.

**Defendants' Negligent Treatment of Ms. Doe**

24.     On multiple occasions over the nineteen years that Ms. Doe remained under their control, Defendants negligently failed to provide appropriate medical care for Ms. Doe.  Further, despite many requests, Ms. Doe received no dental care for eighteen years.  In 2008,  Ms. Doe visited a dentist for the first time in the United States to treat a tooth problem that had persisted for years.  Ms. Doe paid for the treatment herself.  Because of the lack of care for so many years, Ms. Doe continues to suffer severe dental problems, including many broken and decayed teeth.

25.     When Ms. Doe developed breathing difficulties and skin conditions as a result of the harsh chemicals that Defendants negligently required her to use for cleaning, the Defendants nevertheless forced her to continue working.

26.     Defendant K. Siddig repeatedly told Ms. Doe that medical care was too expensive and only rarely permitted her to seek medical attention in the most dire of circumstances.

27.     Ms. Doe was also injured by one of the Defendants' disabled children because of the Defendants' negligent supervision.  The Defendant's son, even when he was a full-grown adult, would often hit Ms. Doe when he was mad about something.  On one occasion, he hit Ms. Doe in the ear so hard that she temporarily lost hearing.  Ms. Doe brought this to the attention of S. Siddig on numerous occasions, but he responded by blaming Ms. Doe, saying she must have done something wrong.

**The Defendants Isolated Ms. Doe**

28.     The Defendants kept Ms. Doe isolated from the outside world, limiting her opportunity to make friends or form social connections.   In this manner, the Defendants prevented her from escaping from their home.   As soon as she arrived in the United States in 1990, Defendant S. Siddig confiscated Ms. Doe's passport and told her that she was not allowed to leave their house alone.   Ms. Doe did not regain access to her passport or have the freedom to leave the house by herself until approximately 2006 when she was twenty-nine years old.

29.     When she arrived in the United States in 1990, Defendants terrified Ms. Doe with stories that she would be kidnapped or arrested if she were ever to leave their home.   Ms. Doe, a child at the time, believed these stories and feared leaving the house.   The Defendants also used this as an excuse for why she could not attend school.   These fears persisted for many years.

30.     Ms. Doe never left Virginia except when accompanying  K. and/or S. Siddig. Even while traveling outside Virginia with the Siddig family, Ms. Doe was often required to work.   For  some of the trips, the Defendants demanded that she reimburse them for the cost of the airplane tickets and other costs.   The first time Ms. Doe left Virginia on her own was in 2008 when she was approximately thirty-two years old.

31.     In order to increase her isolation, Defendants prevented Ms. Doe from learning English for many years.   Ms. Doe eventually taught herself to speak English, but this took her many years without any formal training.   The Defendants did not permit Ms. Doe to attend classes until the Fall of 2005, when she was twenty-nine years old.   In contrast, all of Ms. Doe's siblings have been able to attend college in their home country (with the exception of a younger sibling who is not yet old enough), in part using the meager earnings that Ms. Doe has been able to send home to them.

32.     In the first six years that Ms. Doe was in the United States, she was only allowed to speak by phone with her family on very rare occasions.  The Defendants would routinely miss appointments that Ms. Doe's parents would set up to talk to her.

33.     When Ms. Doe's family members in the United States attempted to reach her at the Defendants' home, the Defendants did not even tell her they had called.

34.     When Defendant S. Siddig learned that Ms. Doe had finally made contact with a relative who later moved to the United States, he became angry and attempted to hit Ms. Doe. This episode further frightened and isolated Ms. Doe.

**Ms. Doe's Escape from the Defendants' Home**

35.     In despair, overworked, abused, and alone, Ms. Doe constantly contemplated suicide and prayed that she would die in her sleep.

36.     Gradually, Ms. Doe, needing more money to survive than the $200 monthly salary for her work for the Defendants, requested permission to work outside the Siddig home. The Defendants finally permitted her to do so, but did not relieve her of her household duties. She completed her regular cleaning, ironing, and cooking chores early in the morning and late at night.  During the day, she worked in a clothing store.

37.     With help from her relatives in the United States, Ms. Doe managed to escape from the control of her traffickers on or about August 7, 2009.

38.     The Defendants have repeatedly attempted to contact or locate Ms. Doe directly and indirectly and have demanded to know when she will return.

39.     Because the traffickers continue to search for her, Ms. Doe fears for her safety and must keep her current location secret.

## FIRST CLAIM FOR RELIEF

**Involuntary Servitude Pursuant to the Thirteenth Amendment to the U.S. Constitution and 18 U.S.C. § 1584**

40.     Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

41.     Ms. Doe brings this claim for relief under the private cause of action implied by the Thirteenth Amendment to the United States Constitution and under 18 U.S.C. § 1584, both of which prohibit involuntary servitude.

42.     As alleged herein, the Defendants S. Siddig and K. Siddig held Ms. Doe in involuntary servitude, forcing her to work seven days a week, starting early in the morning until late at night.

43.     Ms. Doe was highly vulnerable to the Defendants' control.  The Defendants exploited this vulnerability.  Trafficked to the United States as a child of fourteen, Ms. Doe had no understanding of the immigration documents prepared for her by the Defendants or their agents and no ability to speak English.

44.     Defendants convinced Ms. Doe that she would suffer serious harm and would be arrested if she attempted to leave the house.

45.     Even before Ms. Doe left Sudan, Defendant S. Siddig, an official at the Sudanese Embassy in Washington, D.C., or his agents procured falsified travel documents for Ms. Doe to come to the United States.  Once she arrived in the United States, S. Siddig confiscated Ms. Doe's passport.

46.     Through such actions, Defendants directed, assisted, conspired, and acted in concert with each other to create and perpetuate a system of involuntary servitude prohibited by the Thirteenth Amendment to the United States Constitution and 18 U.S.C. § 1584.

47.     As a direct and proximate result of these actions, Ms. Doe has sustained physical injuries including skin damage, chest pains, and permanent respiratory ailments.  She has also suffered severe emotional distress and economic losses.

48.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## SECOND CLAIM FOR RELIEF

### Trafficking with Respect to Forced Labor in Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1590, 1595

49.     Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

50.     By recruiting and inducing Ms. Doe to accept employment with them in the United States, through fraud and deception for the purposes of subjecting her to nineteen years of forced labor, the Defendants engaged in trafficking of Ms. Doe in violation of 18 U.S.C. § 1590. Plaintiff is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

51.     Defendants recruited, harbored, transported, and obtained Ms. Doe for the purposes of subjecting her to nineteen years of forced labor in violation of 18 U.S.C. § 1590.

52.     Defendants convinced Ms. Doe that she would suffer serious harm if she attempted to leave the house.

53.     Defendants abused and threatened to abuse the legal process by confiscating her passport, limiting her ability to travel, and by telling Ms. Doe that she would be arrested if she attempted to leave the house.

54.     As a direct and proximate result of the Defendants' actions, Ms. Doe has sustained damages, including physical injury, emotional distress, and economic losses.

55.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## THIRD CLAIM FOR RELIEF

### Forced Labor Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1589, 1595

56.     Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

57.     The Defendants knowingly obtained Ms. Doe's labor and services by threats of kidnapping, patterns of abusive behavior, threats of harm if she were to leave the house alone, and abused and threatened abuses of legal processes as described by the forced labor provisions of the Trafficking Victims Protection Act, 18 U.S.C. § 1589.

58.     As a direct and proximate result of Defendants' actions, Ms. Doe has sustained damages, including physical injury, economic loss, and emotional distress.

59.     Ms. Doe brings these claims pursuant to the civil cause of action for victims of forced labor in 18 U.S.C. § 1595.  Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract

60.     Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.     Defendants executed a written contract for Ms. Doe's services as a nanny and domestic servant.  The contract required Defendants to pay Ms. Doe at least the federal statutory minimum wage for all hours worked during Ms. Doe's employment with the Siddigs, with payments split 50 percent to Ms. Doe and 50 percent to her parents in Sudan.

62.     Defendants breached the contract by failing to pay Ms. Doe the agreed rate of pay for all hours worked during Ms. Doe's employment with the Siddigs.

63.     As a result of the breach, Ms. Doe suffered economic loss in the amount of unpaid wages to be proven at trial, including attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### Federal Minimum Wage

64.     Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

65.     The Defendants employed Ms. Doe within the meaning of the Fair Labor Standards Act, 29 U.S.C. §§ 203(d)-(e).

66.     The Defendants willfully failed to pay Ms. Doe statutory minimum wages, in violation of 29 U.S.C. § 206(a) and regulations of the United States Department of Labor.

67.     At all times relevant hereto, the relationship between the Defendants and Ms. Doe was one of private master and servant.

68.     The Defendants' willful violation of the Fair Labor Standards Act entitles Ms. Doe to recovery of her unpaid minimum wages, an equal amount as liquidated damages, and reasonable attorneys' fees and costs of the action pursuant to 29 U.S.C. §§ 201 *et seq.* and United States Department of Labor regulations.

## SIXTH CLAIM FOR RELIEF

### False Imprisonment

69.     Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

70.     Defendants knowingly and intentionally confined Ms. Doe within their house by threats of serious harm and arrest, by legal coercion, by abuse of legal process, and by verbal abuse so as to deprive Ms. Doe of her freedom of movement.

71.     Ms. Doe was conscious of being confined and did not consent to her confinement.

72.     Defendants confined Ms. Doe knowingly and willfully and with malice and reckless disregard for her rights.

73.     As a proximate result of Defendants' conduct, Ms. Doe suffered pain and suffering, including emotional distress and embarrassment and humiliation.

74.     Plaintiff is therefore entitled to recover these damages in an amount to be proven at trial, including attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**

**Fraudulent Inducement**

75.     Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

76.     Upon information and belief, the Defendants intentionally and knowingly misrepresented to Ms. Doe the conditions of her employment and conditions in the United States in order to induce her to come to the United States, under the pretense that, *inter alia,* Ms. Doe would attend school and be treated by the Defendants like their own daughter.

77.     Upon information and belief, the Defendants made the above misrepresentations with the intention that Ms. Doe would rely on them in order to entice her to come to the United States and to force her to work in their household.

78.     Upon information and belief, the Defendants made these false representations to Ms. Doe aware that her family would welcome their offer to provide education and employment

in the United States.  In the eyes of Ms. Doe's family, the opportunity offered to Ms. Doe would improve her ability to support herself and her family.

79.     Ms. Doe and her family did in fact rely on the Defendants' misrepresentations to her and her family's detriment and, as a result, Ms. Doe was forced to work as a domestic worker for the Defendants for nineteen years and denied the chance to attend school as a child.  Ms. Doe has suffered great economic, physical, and emotional harm.

80.     Upon information and belief, the Defendants never intended to follow through, and did not follow through, on their promises, notwithstanding any of the aforementioned representations made to Ms. Doe.  The Defendants did not intend to and did not allow Ms. Doe to attend school, did not plan to and did not give her any days off, did not plan to and did not take care of her medical and social needs and, in short, did not plan to raise her like a daughter. Instead, the Defendants planned to force, and did force, Ms. Doe to work long hours, seven days a week, for themselves, their four children, and many guests.

81.     Upon information and belief, at the time that the Defendants made the foregoing representations and promises to Ms. Doe and her family, they had no intention of meeting those representations and promises.

82.     Upon information and belief, the Defendants made the foregoing misrepresentations with a conscious and deliberate disregard of the interests of others such that their conduct may be called willful or wanton, and such conduct has the character of outrage frequently associated with criminal conduct.

83.     At all times relevant hereto, the relationship between the Defendants and Ms. Doe was one of private master and servant.

84. As a direct and proximate result of these actions, Ms. Doe has sustained physical and economic damages.

85. Plaintiff is therefore entitled to recover these damages in an amount to be proven at trial, including attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

### Unjust Enrichment

86. Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

87. Ms. Doe rendered services as a live-in domestic servant to the Defendants for nearly nineteen years in good faith and with the expectation that she would be fairly compensated for such services.

88. The Defendants accepted these services but failed to compensate Ms. Doe for the fair market value of her services.

89. The Defendants have been unjustly enriched at Ms. Doe's expense.

90. At all times relevant hereto, the relationship between the Defendants and Ms. Doe was one of private master and servant.

91. Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## NINTH CLAIM FOR RELIEF

### Quantum Meruit

92. Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

93.     From 1990 to August 2009, Ms. Doe provided nanny and domestic services to Defendants in good faith.

94.     Defendants accepted these services, and Ms. Doe expected to be fairly and equitably compensated for the services rendered to Defendants, the value of which is calculable at trial.

95.     Defendants did not fairly and equitably compensate Ms. Doe.

96.     Plaintiff is entitled to be compensated in quantum meruit in an amount to be determined at trial, including attorneys' fees.

### TENTH CLAIM FOR RELIEF

#### Intentional Infliction of Emotional Distress

97.     Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

98.     The Defendants intentionally misrepresented what Ms. Doe's life would be once she moved to the United States.

99.     On a daily basis, the Defendants used their position of power and control over Ms. Doe to engage in a pattern of outrageous verbal and psychological abuse against her.

100.    Aware that Ms. Doe was only a child when she arrived in the United States, the Defendants exploited her dependence, trust, and vulnerability.

101.    Aware of Ms. Doe's sense of isolation and distress, the Defendants repeatedly and outrageously prevented her from contacting or being contacted by her family, thereby exacerbating her suffering.

102.    As a proximate result of the Defendants' conduct, Ms. Doe has suffered and will continue to suffer extreme emotional distress.

103.    Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF

### Fraud

104.    Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

105.    Upon information and belief, the Defendants intentionally and knowingly misrepresented to Ms. Doe the conditions of her employment and conditions in the United States in order to induce her to come to the United States, under the pretense that, *inter alia,* Ms. Doe would attend school, would be treated by the Defendants like their own daughter, and would be paid for all hours worked.

106.    Upon information and belief, the Defendants intentionally and knowingly misrepresented to Ms. Doe that she would start school as soon as certain conditions were met, such as when a supposed new school was built or when Ms. Doe could obtain a green card.

107.    The Defendants misrepresented material facts.

108.    Ms. Doe and her family did in fact rely on the Defendants' misrepresentations to her and her family's detriment and, as a result, Ms. Doe was forced to work as a domestic worker for the Defendants for nineteen years and denied the chance to attend school until she was almost thirty years old.  Ms. Doe has suffered great economic, physical, and emotional harm.

109.    Upon information and belief, the Defendants made the foregoing misrepresentations with a conscious and deliberate disregard of the interests of others such that their conduct may be called willful or wanton, and such conduct has the character of outrage frequently associated with criminal conduct.

110.    As a direct and proximate result of these actions, Ms. Doe has sustained physical and economic damages.  For example, whereas Ms. Doe's siblings have attended college in their home country, because of Defendants' fraud, Ms. Doe was unable to gain an education, causing her to suffer substantial lost income.

111.    Plaintiff is therefore entitled to recover these damages in an amount to be proven at trial, including attorneys' fees.

## TWELFTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

112.    Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

113.    The Defendants engaged in negligent conduct toward Ms. Doe, causing her to suffer severe emotional distress.

114.    The Defendants owed a duty to Ms. Doe as her employers and as her de facto guardians because she was utterly dependent upon them in the United States.  Unfamiliar with U.S. customs and institutions and unable to speak English, Ms. Doe relied on the Defendants for access to medical care, dental care, income, shelter, and food.  In addition, because Ms. Doe arrived in the United States on an A-3 visa, her immigration status was entirely dependent upon her employers.  Defendants breached that duty.

115.    As her employers, Defendants selected and purchased the cleaning supplies that Ms. Doe used to clean the Defendants' home.  Defendants owed Ms. Doe a duty to select cleaning products that would not injure her health.  Defendants breached this duty.

116.    Defendant failed to obtain prompt, appropriate medical and dental care for Ms. Doe, even after repeated requests by Ms. Doe.  As a result, she has lasting medical and dental problems, including burns, scars, and broken and decaying teeth.

117.    As a proximate result of the Defendants' conduct, Ms. Doe has suffered and will continue to suffer extreme emotional distress.

118.    Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

## THIRTEENTH CLAIM FOR RELIEF

### Negligence

119.    Ms. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

120.    The Defendants owed a duty to Ms. Doe as her employers and as her de facto guardians because she was utterly dependent upon them in the United States.  Unfamiliar with U.S. customs and institutions and unable to speak English, Ms. Doe relied on the Defendants for access to medical care, dental care, income, shelter, and food.  In addition, because Ms. Doe arrived in the United States on an A-3 visa, her immigration status was entirely dependent upon her employers.  Defendants breached that duty.

121.    As her employers, Defendants selected and purchased the cleaning supplies that Ms. Doe used to clean the Defendants' home.  Defendants owed Ms. Doe a duty to select cleaning products that would not injure her health.  Defendants breached that duty.

122.    The Defendants owed Ms. Doe a duty to supervise their two disabled children and to prevent them from harming Ms. Doe.  The Defendants breached that duty.

123.    Defendant failed to obtain prompt, appropriate medical and dental care for Ms. Doe, even after repeated requests by Ms. Doe.  As a result, she has lasting medical and dental problems, including burns, scars, and broken and decaying teeth.  Defendants' failure to obtain appropriate medical and dental care breached the duty of care owed to Ms. Doe.

124.    As a proximate result of the Defendants' conduct, Ms. Doe has suffered and will continue to suffer physical and emotional harm, including significant skin damage, permanent respiratory ailments, and severe dental damage.

125.    Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees.

**WHEREFORE,** Plaintiff respectfully requests that judgment be granted as follows:

(a) Money damages for each Claim for Relief;

(b) Punitive and exemplary damages according to proof;

(c) Attorneys' fees and costs for Plaintiff against the Defendants; and

(d) Such other further relief as the Court may deem just and proper.

Plaintiff demands a trial by jury.

Respectfully submitted,

Dated:  January 7, 2011                    By:___*/s/  Martina E. Vandenberg*_____
                                           Martina E. Vandenberg
                                           (DC Bar No. 476685)
                                           David Z. Moskowitz
                                           (DC Bar No. 994469)
                                           JENNER & BLOCK LLP
                                           1099 New York Ave., N.W., Suite 900
                                           Washington, D.C. 20001
                                           (v) 202-639-6000
                                           (f) 202-639-6066
                                           mvandenberg@jenner.com
                                           dmoskowitz@jenner.com

                                           *Counsel for Jane Doe*

20

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2011, I caused copies of the foregoing to be transmitted via ECF to the following counsel:

Nicole E. Mackin
The Law Office of Nicole Mackin
1629 K Street, N.W., Suite 300
Washington D.C. 20005
(p) 571-226-6926
(f) (888) 266-0046
NMackin@MissCriminalLawyer.com

*Counsel for Defendants*

_____ */s/ Martina E. Vandenberg*_____
Martina E. Vandenberg