**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | |
| v. | Case No. 1:10-cv-01256 (CKK) |
| SAFWAT HASSAN SIDDIG, *et al.*, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITY**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Martina E. Vandenberg
David Z. Moskowitz
JENNER & BLOCK LLP
1099 New York Ave., N.W., Suite 900
Washington, D.C. 20001
(p) 202-639-6000
(f) 202-639-6066
mvandenberg@jenner.com
dmoskowitz@jenner.com

*Counsel for Plaintiff Jane Doe*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

LEGAL STANDARDS ........................................................................................................ 7

ARGUMENT ........................................................................................................................ 8

    I.    Ms. Doe's Claims Are Not Barred By Laches. ................................................ 8

    II.   All Relevant Statute of Limitations Should Be Tolled Until July 26, 2008.................. 11

    III.  Ms. Doe Has Stated A Claim For Each Cause of Action, And No Claim Should
          Be Barred By Any Relevant Statute of Limitations........................................................ 15

        A.  First Claim: Involuntary Servitude Pursuant to the Thirteenth Amendment to
            the U.S. Constitution and 18 U.S.C. § 1584. ........................................................ 15

        B.  Second Claim: Trafficking with Respect to Forced Labor in Violation of the
            Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1590, 1595. ............. 18

        C.  Third Claim: Forced Labor Violation of the Trafficking Victims Protection
            Act of 2000, 18 U.S.C. §§ 1589, 1595................................................................ 20

        D.  Fourth Claim: Breach of Contract........................................................................ 21

        E.  Fifth Claim: Fair Labor Standards Act. ............................................................... 24

        F.  Sixth Claim: False Imprisonment. ....................................................................... 29

        G.  Seventh Claim: Fraudulent Inducement............................................................... 31

        H.  Eighth Claim: Unjust Enrichment........................................................................ 33

        I.   Ninth Claim: Quantum Meruit............................................................................. 35

        J.   Tenth Claim: Intentional Infliction of Emotional Distress. .................................. 37

        K.  Eleventh Claim: Fraud. ........................................................................................ 37

        L.  Twelfth Claim: Negligent Infliction of Emotional Distress. ................................ 38

        M.  Thirteenth Claim: Negligence................................................................................ 39

CONCLUSION.................................................................................................................... 41

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | |
| v. | Case No. 1:10-cv-01256 (CKK) |
| SAFWAT HASSAN SIDDIG, *et al.*, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITY
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff Jane Doe, by undersigned counsel, respectfully submits this memorandum in oppositions to Defendants' Motion to Dismiss (Docket #18).

## INTRODUCTION

Plaintiff Jane Doe was trafficked into the United States as a fourteen-year-old girl by Defendant Safwat Siddig, then a diplomat in the Sudanese Embassy, and his wife, Kawthar Suliman.  For nineteen years, from 1990 to 2009, Defendants falsely imprisoned Ms. Doe and subjected her to forced labor and involuntary servitude, all in violation of international, federal, and state law.  Ms. Doe brings these claims seeking damages and restitution for unpaid wages, damages for being trafficked into the United States, and damages for breach of contract and various state torts.

Defendants have filed a Motion to Dismiss on two primary grounds: (1) that Ms. Doe failed to timely file her claims, either under the doctrine of laches or the statute of limitations; and (2) that Ms. Doe has failed to state a claim for relief on various causes of action.  Neither ground has any merit, and the Motion to Dismiss should be dismissed in its entirety.

Defendants have filed a deeply flawed brief, full of erroneous legal assertions and based inappropriately on their own version of the facts, rather those alleged in the Amended Complaint. Defendants dutifully recite the legal standard for a motion to dismiss, and then ignore that standard completely.  Defendants acknowledge that this Court must accept all factual allegations in the Amended Complaint as true, but spend *three pages* of their brief describing their own self-serving version of the facts.  Defendants then actually cite and rely on these "facts," rather than the facts alleged in the Amended Complaint.  Defendants fail to cite to a single paragraph of the Amended Complaint in their brief.  As a result, their entire argument is infected with their own irrelevant counter-narrative.  Once these errors are removed, and Ms. Doe's alleged facts are accepted as true, it is clear that Ms. Doe has stated a claim for relief on each cause of action.

Moreover, Defendants seek to shield themselves from liability based on the lengthy period of time that they imprisoned Ms. Doe and forced her to work as their servant.  This Court should refuse to allow Defendants to hide behind their own misconduct.  Ms. Doe requests that this Court equitably toll any applicable statute of limitations, as various other courts have done under similar circumstances, and deny Defendants' laches defense.

As explained in detail herein, all of Defendants' arguments are without merit.  Ms. Doe respectfully requests that the Court deny Defendants' Motion to Dismiss.

### STATEMENT OF FACTS

Plaintiff Jane Doe (hereinafter "Ms. Doe" or "Plaintiff") was trafficked for forced labor into the United States by Defendants Safwat Hassan Siddig (hereinafter "S. Siddig") and Kawthar Hassan Suliman A.K.A. Kawthar Siddig (hereinafter "K. Siddig") (collectively, "Defendants") at the age of fourteen.  Amended Compl. ¶ 1.  For nineteen years, from 1990 until 2009, the Defendants falsely imprisoned Ms. Doe and forced her to work as a domestic servant

and nanny in their home.  *Id.* ¶ 2.  Ms. Doe was made to work, or be available to work, seven days a week, starting early in the morning until late at night, cleaning Defendants' home and caring for Defendants' children; she received no breaks for vacation or sick leave.  *Id.* ¶¶ 17-19, 21, 42, 80.  For all of her long hours, Ms. Doe was paid only $100 per month from 1990 to 1999 or 2000 (approximately $3.29 per day), $150 per month from 1999 or 2000 to 2006 (approximately $4.93 per day), and $200 per month from 2006 to 2009 (approximately $6.58 per day).  *Id.* ¶ 3.

In August 1990, prior to her arrival in the United States, Ms. Doe was a fourteen-year-old primary school student, having just completed the sixth grade.  *Id.* ¶ 12.  Defendant S. Siddig was an official in the Sudanese Embassy in the United States.  *Id.* ¶ 11.  He lived in Woodbridge, VA, with his wife, Defendant K. Siddig, and their two disabled children.  *Id.* ¶¶ 11, 13. Defendant S. Siddig deceived Ms. Doe and her family into allowing him to bring her to the United States by falsely promising that Ms. Doe would attend school in the United States, that she would be raised like a daughter, and that she would be able to return home regularly to visit her close-knit family.  *Id.* ¶¶ 6, 12, 13.  Defendant S. Siddig claimed that Ms. Doe would merely have to help take care of his two disabled children, who were a few years younger than Ms. Doe. *Id.* ¶ 13.

In order to obtain an A-3 visa for Ms. Doe, Defendant S. Siddig drafted and executed a contract for Ms. Doe to serve as a nanny and domestic servant for the Defendants in the United States.  ¶¶ 14-15.  This contract provided that Defendants would pay Ms. Doe at least the federal statutory minimum wage for all time worked, with payments to be divided 50 percent to Ms. Doe and 50 percent to her parents in Sudan.  *Id.* ¶ 14.  Ms. Doe believes that this contract was presented to consular officials at the U.S. Embassy in Sudan in order to obtain the A-3 visa.

*Id.* ¶ 15.   Recognizing that the U.S. government would not issue an A-3 visa to a minor, Defendant S. Siddig or his agents fraudulently made arrangements to misrepresent Ms. Doe's age on her visa and passport applications so that she would appear to be an adult.  *Id.* ¶ 16.

Once Ms. Doe arrived in the United States, nothing was as promised.  Defendants required Ms. Doe to work long hours, seven days each week, without any days off.  *Id.* ¶¶ 17-19. Ms. Doe was required daily to clean Defendants' entire townhouse from top to bottom, wash and iron clothing for the Defendants and their children, wash dishes by hand, mop floors, cook meals, clean up after meals, take care of the children, and prepare the children for bed.  *Id.* ¶ 17. On weekends, Ms. Doe worked even longer hours, because Defendants were constantly demanding her attention and because Defendants ordered Ms. Doe to be the servant for their many invited guests.  *Id.* ¶ 18.   Within a few of years of her arrival, the Siddigs had two additional children, and Ms. Doe was charged with caring for these infants as well as the two disabled children.  *Id.* ¶¶ 13, 17.   Moreover, Defendants created a hazardous work environment for Ms. Doe, requiring her to use harsh chemicals that caused Ms. Doe to develop scars, rashes, and peeling skin that continue to disfigure her hands and feet today.  *Id.* ¶ 20.

Contrary to Defendants' claim, Ms. Doe was not "given complete freedom of movement."  *See* Mot. to Dismiss at 4.  Defendants confiscated Ms. Doe's passport immediately upon her arrival in the United States, deceived her about her immigration status, and told her she was not permitted to leave the house alone.  *Id.* ¶ 7, 28.  Defendants terrified Ms. Doe with claims that she would be kidnapped or arrested if she ever left the house alone.  *Id.* ¶ 29. Defendants isolated Ms. Doe from the outside world, allowing her speak with her family only on very rare occasions and limiting her opportunity to make friends or form social connections.  *Id.* ¶¶ 7, 28, 32, 33.  To further increase her isolation, Defendants prevented Ms. Doe from learning

English for many years.  *Id.* ¶ 31.  Ms. Doe eventually taught herself to speak English, but this took her many years without any formal training.  *Id.*  The Defendants did not allow Ms. Doe to attend school when she was a minor and in fact did not permit Ms. Doe to attend any sort of class until the Fall of 2005 (fifteen years after she arrived), when she was twenty-nine years old.  *Id.* ¶¶ 5, 7, 29, 31.

When Ms. Doe became ill, the Defendants negligently failed to obtain prompt medical treatment, repeatedly telling her it was too expensive.  *Id.* ¶¶ 7, 26.  Ms. Doe received no dental care for eighteen years; even when she developed serious dental problems, the Defendants negligently failed to take her to a dentist.  *Id.* ¶¶ 7, 24.  Ms. Doe saw a dentist for the first time in 2008 and paid for the visit herself.  *Id.* ¶ 24.  This negligence has resulted in severe dental problems that persist to this day, including many broken and decayed teeth.  *Id.*

Defendants also subjected Ms. Doe to constant verbal and psychological abuse.  *Id.* ¶ 21. If Ms. Doe failed to meet the Defendants' unreasonable demands or if anything went wrong in the house, the Defendants yelled at her, humiliating and shaming her.  *Id.* ¶ 22.  When Defendant S. Siddig learned that Ms. Doe had finally made contact with one of her relatives (who later moved to the United States), he became angry and attempted to hit Ms. Doe.  *Id.* ¶ 34.  The Defendants' abuse has caused lasting psychological harm – Ms. Doe frequently has nightmares of K. Siddig's voice screaming at her.  *Id.* ¶ 23.  All of these horrible conditions caused Ms. Doe to contemplate suicide and pray that she would die in her sleep.  *Id.* ¶ 35.

Ms. Doe was also injured by one of the Defendants' disabled children because of the Defendants' negligent supervision.  *Id.* ¶ 27.  The Defendant's son, even when he was a full-grown adult, often hit Ms. Doe.  *Id.*  On one occasion, he struck Ms. Doe in the ear so hard that she temporarily lost hearing.  *Id.*  Though Ms. Doe brought this to the attention of S. Siddig on

numerous occasions, he simply reprimanded Ms. Doe and failed to protect her from further harm. *Id.*

For approximately the first sixteen years that Ms. Doe lived with the Siddigs, she never left Defendants' house alone. *Id.* ¶ 28. Ms. Doe was conscious that she was confined to their house (except when accompanied) based on the threats of serious harm or arrest if she were to leave, and the fact that the Defendants had confiscated her passport. *Id.* ¶¶ 28, 29, 70, 71. Likewise, during the handful of times that Ms. Doe travelled outside of Virginia, she was always accompanied by K. and/or S. Siddig and was often travelling for the purposes of work. *Id.* ¶ 30. For example, in 1996, Ms. Doe accompanied the Defendants on a family vacation to Saudi Arabia and Sudan. *Id.* ¶ 6. While the parents visited religious sites on Hajj, Ms. Doe was required to take care of the Siddig children and was not permitted to visit the sites. *Id.* She travelled with the Defendants back to the United States and was not permitted to leave the United States again until 2008. *Id.*

In approximately 2006, Ms. Doe, then twenty-nine years old, began insisting that she needed more money than her meager $200 monthly salary (half of which went to her parents). *Id.* ¶ 36. She requested permission to work outside of the Siddig home, which Defendants eventually granted. Nevertheless, the Defendants still demanded Ms. Doe complete all of her regular household chores and duties in their home. *Id.* This was the first time that Ms. Doe had ever been allowed to leave the house alone. *Id.* ¶ 28. She, however, remained under the tight control of Defendants: Ms. Doe's place of work, a clothing store, was near Defendants' house.

It took several more years before Defendants permitted Ms. Doe to travel further by herself. In July 2008, Defendants finally allowed Ms. Doe to travel to Sudan alone to visit her family. *Id.* ¶¶ 6, 30.

She had not seen her family for twelve years.  Ms. Doe returned to the Defendants' house in October 2008.  Later, with help from her relatives in the United States with whom she had made contact, Ms. Doe managed to escape from the control of her traffickers on or about August 7, 2009.  *Id.* ¶¶ 34, 37.  Once she was outside the Defendants' control, Ms. Doe was finally able to obtain legal assistance and filed this lawsuit within one year of her escape.

## LEGAL STANDARDS

Defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2) requires only a "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted).  That is, a plaintiff need only plead enough facts, when taken as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In deciding a Rule 12(b)(6) motion,  a "court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations."  *Saunders v. District of Columbia*, 711 F. Supp. 2d 42, 49-50 (D.D.C 2010).   "The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."  *Id.* At 50 (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).

Defendants also argue that several claims are time-barred by relevant statutes of limitations.  The statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), which may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) where the defense would bar a claim for failure to state a claim upon which relief can be granted.

The party that pleads a statute of limitations defense has the burden of proof. *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005); *Lo v. Burke*, 455 S.E. 2d 9, 12 (Va. 1995) ("[D]efendant has the burden of proof to establish facts necessary to prevail on a statute of limitations plea.").

## ARGUMENT

### I.      Ms. Doe's Claims Are Not Barred By Laches.

Ms. Doe's claims are not barred by the doctrine of laches. As an initial matter, the doctrine of laches is inapplicable because all Ms. Doe's claims are at law for money damages and are governed by applicable statutes of limitations. "Where there is an applicable statute of limitations, however, the defense of laches does not apply." *Holland v. Valley Service, Inc.*, 612 F. Supp. 2d 75, 80 (D.D.C. 2009); *see also, e.g.*, *United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at law"); *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946); *Saffron v. Dep't of the Navy*, 561 F.2d 938, 941 (D.C. Cir. 1977) ("[O]nly when a court is importuned 'to enforce rights cognizable only in equity (are) statute(s) barring legal causes of action . . . not controlling'") (alterations in original); *Potts v. Howard Univ. Hosp.*, 623 F. Supp. 2d 68, 73 n.3 (D.D.C. 2009); *Connors v. Hi-Heat Coal Co.*, 772 F. Supp. 1, 1 n.1 (D.D.C. 1991); *Combs v. W. Coal Corp.*, 611 F. Supp. 917, 920 (D.D.C. 1985) (same).

But even if laches were applicable to the causes of action here, Defendants have failed to prove either of the doctrine's two elements. *See Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 47 (D.C. Cir. 2005) (noting that the burden of proof for laches lies with the party asserting the defense). Laches requires proof "that [1] the plaintiff delayed inexcusably or unreasonably in filing suit, and [2] that the delay was prejudicial to the defendant delay." *Nat.l Wildlife Fed. v. Burford*, 835 F.2d 305, 318 (D.C. Cir. 1987). First, Defendants cannot prove that Ms. Doe inexcusably delayed filing suit. Defendants' argument regarding this element relies entirely on

their own version of facts, and not those alleged in the complaint.[1]   Defendants assert that delay

was inexcusable because Ms. Doe "had complete freedom of movement" throughout her twenty

years in the United States and thus "could have, at any time since 1991, consulted with an

attorney and/or filed a pleading pro se."   Mot. to Dismiss at 6-7.   Plaintiff did not allege,

however, that she had complete freedom of movement.   To the contrary, she alleged that she was

confined within the Siddig house through threats of serious harm and through abuse of legal

process.   Ms. Doe alleged that Defendants confiscated Ms. Doe's passport and caused Ms. Doe

to fear arrest if she attempted to leave.     Amended Compl. ¶¶ 28, 29, 43, 44, 52, 53, 57, 70.

Defendants further prevented Ms. Doe from leaving their house by exploiting her vulnerability as

a school-age child with no English skills (who was prevented by Defendants from learning

English for many years).   *Id.* ¶¶ 28, 29, 31, 120.   Defendants isolated Ms. Doe from her family

and the outside world and limited her ability to make friends or form social connections.   *Id.*   As

a result, Ms. Doe never left the Siddig household alone until approximately 2006.   *Id.* ¶ 28.

When Ms. Doe eventually escaped the Defendants' control in August 2009, she filed suit within

a year.   *Id.* ¶ 37.   Accepting these allegations as true, there is no basis to argue that Ms. Doe

inexcusably delayed filing her suit.[2]

---

[1] This is a theme throughout Defendants' motion to dismiss: acknowledge that they must view the allegations "in the light most favorable to the Plaintiff," Mot. to Dismiss at 6, and then proceed to simply ignore the standard.

[2] Moreover, a "well-established principle of equity [is] that laches runs only from the time a party has reached his majority." *Pro-Football, Inc. v. Harjo*, 415 F.3d at 48.   Consequently, the first four years that Ms. Doe was in the United States do not count towards laches.   Likewise, Defendant S. Siddig was a diplomat for many years (the basis for Ms. Doe's A-3 visa). Amended Compl. ¶¶ 11, 15.   During that time, it is likely that he enjoyed diplomatic immunity pursuant to the Vienna Convention on Diplomatic Relations ("VCDR"), Apr. 18, 1961, 23 U.S.T. 3227, T.I.A.S. 7502, 500 U.N.T.S. 95, and thus Ms. Doe could not have sued the Defendants even if she had not been confined.   Once Defendant S. Siddig's status as a diplomat terminated, he lost his diplomatic immunity and retained only a residual immunity covering "official acts."   *See* VCDR, Article 39(2); *Swarna v. Al-Awadi*, 622 F.3d 123, 133 (2d Cir. 2010).

Second, Defendants have not alleged, let alone proved, that they were prejudiced by delay. Defendants' alleged prejudice is that "[S. Siddig] is forced to collect evidence and contact witnesses from twenty (20) years ago." Mot. to Dismiss at 7. Mere extra effort is simply not sufficient to demonstrate prejudice. Defendants must, at a minimum, show that the delay "resulted in a loss of evidence or witnesses supporting [their] position," or that they changed "position in a manner that would not have occurred but for plaintiff's delay."[3] *Gull Airborne Instruments, Inc. v. Weinberger*, 694 F.2d 838, 844 (D.C. Cir. 1982). Defendants have proven neither.

Finally, Defendants are further barred from using the equitable defense of laches by their own "unclean hands." *See, e.g.*, *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002) ("A party with unclean hands may not assert laches."); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 825 (7th Cir. 1999); *see also* 30A C.J.S. Equity § 124 (2010 update). This is because the unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). In order to invoke a laches defense, a party must have "acted fairly and without fraud or deceit as to the controversy in issue." *Jarrow Formulas, Inc.*, 304 F.3d at 841 (quotation marks omitted); *see also La Republique Francaise v. Saratoga Vichy Spring Co.*, 191 U.S. 427, 439 (1903) (laches not available "in a case of actual fraud"). Here, according to the allegations in the Amended

_____

Only at that point could Ms. Doe have maintained an action against Defendants, assuming she had not been confined. Finally, it is noteworthy that Defendants complain that Ms. Doe did not sue virtually the moment she got off the plane in 1990 as a fourteen-year-old girl.

[3] Notably, in their initial disclosures, Defendants recently provided a lengthy list of 53 witnesses, including information on how to contact the individuals.

Complaint, Defendants have not acted fairly; to the contrary, their actions have been replete with fraud and deceit for the past twenty years.

## II.     All Relevant Statute of Limitations Should Be Tolled Until July 26, 2008.

The statute of limitations for each of Ms. Doe's claims should be equitably tolled until July 26, 2008, under both federal and Virginia law, because Defendants' conduct prevented her from seeking legal recourse.  From August 1990 until July 26, 2008, Ms. Doe was confined to Defendants' home based on Defendants' threats of serious harm or arrest if she were to attempt to leave.  Amended Compl. ¶¶ 28-30, 44.  On July 26, 2008, Ms. Doe for the first time left Defendants' control when she traveled to Sudan alone.  *Id.* ¶¶ 6, 30.  As a result, the statute of limitations for all of Ms. Doe's claims should be tolled until that date, because Defendants' wrongful conduct in confining Ms. Doe prevented her from asserting her claims.

It is well-established that the equitable tolling doctrine is read into every federal statute of limitations.  *See, e.g.*, *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C. Cir. 1977).  Under federal law, equitable tolling is available where (1) defendant's wrongful conduct prevented plaintiff from asserting the claim; or (2) extraordinary circumstances outside the plaintiffs' control made it impossible to timely assert the claim.  *National Coalition Government of Union of Burma v. Unocal, Inc.*, 176 F.R.D. 329, 360 (C.D. Cal. 1997).

The Virginia Code also provides for equitable tolling under certain circumstances:

> When the filing of an action is obstructed by a defendant's . . . using any other direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

Va. Code § 8.01-229(D).  In construing this provision, the Virginia Supreme Court has held that a plaintiff is entitled to equitable tolling when he can "establish that the defendant undertook an

affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file [his] action." *Grimes v. Suzukawa*, 551 S.E. 2d 644, 646 (Va. 2001).

Courts have repeatedly held that the statute of limitations is tolled for both federal and state claims under circumstances factually similar to the present case. In *Deressa v. Gobena*, No. 1:05-CV-1334 (JCC), 2006 WL 335629 (E.D. Va. Feb. 13, 2006), the plaintiff – an Ethiopian national – claimed that the defendants had trafficked her, held her as a "virtual prisoner" by withholding her passport, and threatened her with deportation when she inquired about her pay. The plaintiff alleged the defendants had misled her about the nature and timing of her pay, thereby inducing her to let the limitations period elapse. The court determined these allegations were sufficient to toll the statute of limitations for claims under the Fair Labor Standards Act and 18 U.S.C. § 1584, as well as Virginia state law claims for breach of contract and fraudulent misrepresentation. *Id.* at *3.

Similarly, in *Hernandez v. Attisha*, No. 3:2009cv0225, 2010 WL 816160, at *4-5 (S.D. Cal. Mar. 5, 2010), the plaintiff alleged that defendants forced her to act as their domestic servant, confiscated her passport, and prevented her from leaving their house. The court found that plaintiff's state law claims for conversion and intentional and negligent infliction of emotional distress were equitably tolled because plaintiff's inability to leave defendants' home resulted in her total incapacity to file suit or pursue any legal rights. *See also, e.g.*, *Hilao v. Estate of Marcos*, 103 F.3d 767, 773 (9th Cir. 1996) (statute of limitations on Torture Victims Protection Act is equitably tolled while defendant remained in position of power, thus intimidating victims from reporting abuses); *Topo v. Dhir*, Case No. 01 Civ. 10881, 2003 U.S. Dist. LEXIS 21937, *15-16 (S.D.N.Y. Dec. 3, 2003) (applying equitable tolling to a state law

conversion claim where defendants held plaintiff's passport, thereby interfering with her ability pursue her claim until she escaped defendants' home).

The facts of Ms. Doe's case are strikingly similar to these cases.  She, too, has alleged that the Defendants trafficked her for the purpose of holding her in forced labor.  Ms. Doe has pled that she was controlled and manipulated by Defendants' actions, including their confiscation of her passport and stories that she would be kidnapped or arrested if she left the house.  Amended Compl. ¶¶ 28-29.  It would be perverse to suggest that Ms. Doe, while she was held in forced labor,  manipulated, and controlled by the Defendants, nevertheless should have – or even could have – initiated legal proceedings to vindicate her rights.  The Defendants took affirmative steps to prevent her from doing so.  The Defendants kept Ms. Doe isolated from the outside world, confiscated her passport, threatened her with serious harm or arrest if she ever attempted to leave, and forced her to remain completely dependent upon them.  *Id.* ¶¶ 7, 28, 29, 32, 33, 70, 71.

Where a party's own actions have induced another into inaction or otherwise prevented her from ascertaining her rights or asserting a claim, the party at fault may not take shelter behind a statute of limitations:

> To decide the case, we need look no further than the maxim that no man may take advantage of his own wrong. Deeply rooted in our jurisprudence, this principle has been applied in many diverse classes of cases by both law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations.

*Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232-33 (1959) (emphasis added; footnotes omitted); *see also Ott v. Midland Ross Corp.*, 523 F.2d 1367, 1370 (6th Cir. 1975) (applying *Glus* to 29 U.S.C. § 255); *cf. Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("The running of the statute of limitations on false imprisonment is subject to a distinctive rule – dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned.").  Ms. Doe lacked

any capacity to seek legal redress until she left Defendants' control for the first time in July 2008.  Complaint ¶¶ 6, 30.  As her Amended Complaint alleges, because of Defendants' various threats and other actions, Ms. Doe did not have the freedom to (and did not) leave Defendants' house alone until 2006.  *Id.* ¶¶ 28, 29, 36, 70, 71.  Accepting these allegations as true, there is no doubt that Ms. Doe was prevented from obtaining legal redress by Defendants' conduct during that time period.[4]  Moreover, even when Ms. Doe was granted slightly more freedom and was permitted to leave the house alone for the purpose of travelling to her job near Defendants' house, she remained tightly under Defendants' control.[5]  Only with her trip to Sudan alone on July 26, 2008 did Ms. Doe first escape Defendants' control, and only at that time did the limitations period for any of Ms. Doe's claims begin to run.

In assessing the Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must construe Ms. Doe's allegations liberally, accept all factual assertions as true, and permit Ms. Doe the benefit of all reasonable inferences.  Under that standard, Ms. Doe has more than adequately alleged that at all times prior to July 26, 2008, Defendants' threats, manipulation, and deceit prevented her from bringing a

---

[4] Furthermore, Defendant S. Siddig retained his diplomatic status for many years while Ms. Doe was living with the Defendants, including when Ms. Doe accompanied the Defendants for work purposes on a family vacation to Saudi Arabia and Sudan.  Amended Compl. ¶ 6.  As discussed in footnote 2, Defendants were immune from suit during that time period until Defendant S. Siddig's diplomatic status terminated.  Any relevant statute of limitations while the Defendants enjoyed diplomatic immunity should be tolled.  *See Gonzalez Paredes v. Vila*, 479 F. Supp. 2d 187, 189 n.2 (D.D.C. 2007).

[5] Ms. Doe should be allowed to develop evidence, including expert testimony, why she remained confined under Defendants' control during this time period as she alleged.  Having been totally confined to Defendants' home (except when accompanied by Defendants or their family members) for her first sixteen years in the United States, and still believing Defendants' threats of harm and arrest were she to try to flee their home, Ms. Doe's understanding that she remained confined and under Defendants' control was entirely reasonable under the circumstances.  Assuming Ms. Doe is able to develop such evidence during discovery, it will be for the jury to decide whether and how long Ms. Doe was confined by Defendants and prevented from seeking legal redress.

claim.[6]   Consequently, all of the relevant statute of limitations for her claims should be tolled until July 26, 2008 under federal and Virginia law.   Because all the relevant limitations periods are two years or longer, as discussed below, all of Ms. Doe's claims remain timely.

### III.   Ms. Doe Has Stated A Claim For Each Cause of Action, And No Claim Should Be Barred By Any Relevant Statute of Limitations.

Defendants assert that Ms. Doe's various causes of action should be dismissed either for failure to state a claim or, for certain counts, based on the statute of limitations.   For the reasons explained below, Ms. Doe has sufficiently alleged facts to state a claim on each cause of action, and none of her claims should be barred under any relevant statute of limitations.   In order to aid the Court's review, Ms. Doe identifies those causes action where the Defendants have not asserted a statute of limitations defense.

### A.   First Claim: Involuntary Servitude Pursuant to the Thirteenth Amendment to the U.S. Constitution and 18 U.S.C. § 1584.

Ms. Doe may bring a claim under 18 U.S.C. § 1584 and the Thirteenth Amendment, both of which prohibit involuntary servitude.   Contrary to Defendants' unsupported assertions, Ms. Doe does have a private cause of action under both provisions.   First, 18 U.S.C. § 1595 creates an explicit private right of action for all Chapter 77 criminal violations, including 18 U.S.C. § 1584.   *See* 18 U.S.C. § 1595 ("An individual who is a victim of a violation of this Chapter may bring a civil action against the perpetrator . . . in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.").   Even before 18 U.S.C. § 1595 was enacted, however, several courts had held that there was an implied private cause of action under 18 U.S.C. § 1584.   *See Manliguez v. Joseph*, 226 F. Supp. 2d 377, 383-84 (E.D.N.Y. 2002); *Flood v. Kuhn*, 316 F. Supp. 271, 280-82 (S.D.N.Y. 1970), *aff'd* 443 F.2d 264 (2d Cir.1971),

---

[6] Alternatively, the Court should at least toll the applicable statute of limitations through 2006, when Ms. Doe alleged was the first time that she ever left Defendants' house alone.

*aff'd on other grounds*, 407 U.S. 258 (1972).  Relying on *Touche Ross & Co. v. Redington*, 442 U.S. 560, 569 (1979), the *Manliguez* court reasoned, for example, that "recognizing a private civil cause of action for involuntary servitude would be consistent with the underlying legislative purpose of section 1584 because it would provide a victim with a direct and efficient means of protecting his or her rights and deter potential offenders from engaging in behavior that the statute was designed to prohibit."[7]  *Manliguez*, 226 F. Supp. 2d at 384.  Congress apparently agreed and explicitly codified the implied right of action with its enactment of 18 U.S.C. § 1595.

Likewise, numerous courts have concluded that the Thirteenth Amendment, which uniquely among constitutional amendments attaches to private conduct as well as state action, contains an implied private cause of action.[8]  *See, e.g.*, *Terry Props., Inc. v. Standard Oil Co.*, 799 F.2d 1523, 1534 (11th Cir. 1986) (explaining that private actors may "be liable directly under the Thirteenth Amendment as it absolutely prohibits the practice of slavery"); *Channer v. Hall*, 112 F.3d 214, 217 n.5 (5th Cir. 1997) (explaining that "suits attacking compulsory labor arise directly under prohibition of § 1 [of the Thirteenth Amendment], which is 'undoubtedly self-executing without any ancillary legislation' and 'by its own unaided force and effect . . . abolished slavery, and established universal freedom'") (quoting *The Civil Rights Cases*, 109

---

[7] Under *Touche Ross & Co.*, a court may imply a private civil cause of action if it determines that Congress, by implication, intended to create one.  442 U.S. at 569.  When courts have implied such a cause of action, in general, "the statute in question . . . prohibited certain conduct or created federal rights in favor of private parties."  *Id.*

[8] The Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."  Unlike nearly every other constitutional prohibition, the Thirteenth Amendment applies directly to private parties.  As a result, Defendants' reliance on the lack of state action (Mot. to Dismiss at 8) is misplaced.  *See Terry Props., Inc. v. Standard Oil Co.*, 799 F.2d 1523, 1534 (11th Cir. 1986) (citing *City of Memphis v. Greene*, 451 U.S. 100, 120 (1981)); *see also Humphreys v. Nager*, 962 F. Supp. 347, 356 (E.D.N.Y. 1997) ("The Thirteenth Amendment is enforceable against private parties in the absence of state action.").

U.S. 3, 20 (1883)) (ellipsis in original); *Martinez v. Calimlim*, 651 F. Supp. 2d 852, 861-64 (E.D. Wis. 2009); *Manliguez v. Joseph*, 226 F. Supp. 2d at 383-84; *Dolla v. Unicast Co.*, 930 F. Supp. 202, 206 (E.D. Pa. 1996); *Bayh v. Sonnenburg*, 573 N.E.2d 398, 410 (Ind. 1991) ("[S]uits attacking compulsory labor itself may rest on the [T]hirteenth [A]mendment."); *Weidenfeller v. Kidulis*, 380 F. Supp. 445 (E.D. Wis. 1974).   Thus, Ms. Doe has a private cause of action under both 18 U.S.C. § 1584 and directly under the Thirteenth Amendment.

Defendants' arguments concerning the retroactivity of these provisions are meritless. Both provisions were enacted or adopted long before the conduct at issue here.   The Thirteenth Amendment was adopted in 1865 while 18 U.S.C. § 1584 was enacted in 1948.   *See United States v. Kozminski*, 487 U.S. 931, 945 (1988).   Consequently, Defendants' concern that the provisions do not have "express retroactive application" is irrelevant.   Indeed, the very cases cited above identified a private right of action before Ms. Doe even arrived in the United States. Defendants' actions have always been illegal.[9]

Defendants have not asserted a statute of limitations defense to any or all of Ms. Doe's claim for involuntary servitude.

---

[9] Because Ms. Doe has always had either an implied or express cause of action available under 18 U.S.C. § 1584, there are no retroactivity issues.   Moreover, given that it has always been illegal under 18 U.S.C. § 1584 (since 1948) to hold an individual in involuntary servitude, the passage of 18 U.S.C. § 1595 did not change any "operative substantive laws," or "create any new duties for, or obligations upon" the Defendants. *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 683 (S.D. Tex. 2009).   Rather, it merely codified an implied right of action for a long-existing public duty to refrain from involuntary servitude. Under such circumstances, 18 U.S.C. § 1595 may be applied retroactively. *Id.* (holding that the extension of the Trafficking Victims Protection Act to extra-territorial locations applied retroactively to conduct overseas where the extension did not change operative substantive law or create any new duties or obligations).

**B.      Second Claim: Trafficking with Respect to Forced Labor in Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1590, 1595.**

Ms. Doe has sufficiently pled all of the elements of trafficking with respect to forced labor in violation of 18 U.S.C. §§ 1590, 1595.  Defendants assert that Ms. Doe has failed to allege "the threat of physical restraint or physical injury or coercion through legal process" necessary for involuntary servitude.  Mot. to Dismiss at 9.  As a preliminary matter, Ms. Doe has alleged that she was threatened with physical injury.  She has also alleged that defendants coerced her to remain through misuse of law or the legal process.  In particular, Ms. Doe alleged that Defendants terrified her with claims that she would be kidnapped, i.e., threatened with physical injury, or arrested, i.e., coercion through law or legal process, if she ever left the house alone.  Amended Compl. ¶ 29.  Defendants also coerced her into staying by confiscating her passport upon arrival into the United States, limiting her ability to leave.  *Id.* ¶28.  When she made contact with a relative who later moved to the United States, Defendant S. Siddig became angry and attempted to hit Ms. Doe, further frightening and isolating her.  *Id.* ¶ 34.  As a result, for approximately the first sixteen years that Ms. Doe lived with the Siddig Defendants, she never left Defendants' house alone.  *Id.*  Ms. Doe was conscious that she was confined to Defendants' house (except when accompanied) based on the threats of serious harm or arrest if she were to leave and the fact that they had confiscated her passport.  *Id.* ¶¶ 28, 29, 70, 71.  These allegations sufficiently state a claim for involuntary servitude.

Moreover, Defendants misconstrue the scope of 18 U.S.C. § 1590.  This statute broadly covers anyone who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services *in violation of this chapter*."  *Id.* (emphasis added).  Chapter 77 includes not only involuntary servitude but also forced labor.  Thus, even if it were true that Ms. Doe did not sufficiently plead the elements for involuntary servitude, which it is not, she still has

a cause of action under the forced labor statute.  The forced labor statute covers a broader array

of coercive methods.  In particular, 18 U.S.C. § 1589 makes it a crime to:

> knowingly provide[] or obtain[] the labor or services of a person—
>
> (1) by threats of serious harm to, or physical restraint against, that person or another person;
>
> (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or
>
> (3) by means of the abuse or threatened abuse of law or the legal processby means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

18 U.S.C. § 1589(a) (2000).[10]  The amended statute, which became law in 2008, further defines

that broad scope of the terms "abuse or threatened abuse of law or legal process" and "serious

harm."

> The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.
>
> The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

18 U.S.C. § 1589(c).  Ms. Doe's allegations clearly fall under these broader definitions of

coercion, even as the law stood prior to 2008.  And, in any event, Defendants have not even

argued that Ms. Doe failed to allege the elements of forced labor.

 Defendants argue that the Trafficking Victims Protection Act ("TVPA") does not have

retroactive effect.  This Court should conclude that the private right of action, 18 U.S.C. § 1595,

---

[10] This law was amended in 2008.  The version cited here is the pre-amended version.

enacted in 2003, should apply retroactively to the passage of the TVPA of 2000.  As Defendants explain, a major concern with retroactivity of statute is that "fairness dictates that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." Mot. to Dismiss at 10.  However, where, as here, the underlying substantive criminal offense was already in existence, those concerns no longer remain.  The passage of 18 U.S.C. § 1595 did not change any "operative substantive laws," or "create any new duties for, or obligations upon" the Defendants.  *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 683 (S.D. Tex. 2009).  Instead, it simply granted a private right of action to enforce what was already illegal.  Under such circumstances, 18 U.S.C. § 1595 may be applied retroactively to the passage of the TVPA of 2000.  *Id.* (holding that the extension of the Trafficking Victims Protection Act to extra-territorial locations applied retroactively where the extension did not change operative substantive law or create any new duties or obligations).

Defendants have not asserted a statute of limitations defense to any or all of Ms. Doe's claim under 18 U.S.C. §§ 1590, 1595.  This claim is governed by a 10-year statute of limitations, subject to tolling as explained in Section II.  *See* 18 U.S.C. § 1595(c).

## C.  Third Claim: Forced Labor in Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1589, 1595.

Defendants' arguments on this claim are merely pasted verbatim from the previous claim. The standard from *United States v. Kozminski*, 487 U.S. 931, 952 (1988), applies to 18 U.S.C. § 1584, not to the much broader array of coercive methods covered in 18 U.S.C. § 1589, as discussed in Section III.B.  Moreover, for the reasons explained in Section III.B, Ms. Doe has pled sufficient facts to state a claim either for involuntary servitude, 18 U.S.C. § 1584, or for forced labor, 18 U.S.C. § 1589.

20

In addition, for the reasons explained in Section III.B, the private right of action under 18 U.S.C. § 1595 to enforce the forced labor provisions of 18 U.S.C. § 1589 should be applied retroactively to the passage of the TVPA of 2000.

Defendants have not asserted a statute of limitations defense to any or all of Ms. Doe's claim under 18 U.S.C. §§ 1589, 1595. This claim is governed by a 10-year statute of limitations, subject to tolling as explained in Section II. *See* 18 U.S.C. § 1595(c).

**D.    Fourth Claim: Breach of Contract.**

Ms. Doe has properly alleged standing to bring a breach of contract claim against Defendants. Defendants claim that Ms. Doe was not a party to the contract for her services as a domestic servant and nanny.[11] In fact, Ms. Doe did allege implicitly that she was a party to the contract because she alleged that the contract was used to obtain an A-3 visa from the U.S. Embassy in Sudan. Amended Compl. ¶ 15. State Department rules require that an A-3 visa applicant provide a written employment contract between the applicant and the diplomatic employer, here Defendant S. Siddig, before an A-3 visa will be issued. The contract was executed in order to obtain the A-3 visa, and Ms. Doe would not have been able to obtain an A-3 visa if she were not a party to the contract.

Nevertheless, even if Ms. Doe was not a party to the contract (which she was), she clearly alleged sufficient facts that she was an intended beneficiary of the contract. Under well-established Virginia law, an intended beneficiary may sue to enforce the terms of a contract, even though he or she is not a party to the contract. *Levine v. Selective Ins. Co. of Am.*, 462 S.E.

---

[11] Defendants' response to Ms. Doe's breach of contract claim is truly astounding given the allegations in the Amended Complaint. Defendants claim that Ms. Doe has absolutely no rights under the written contract for her services (which they admit exists) because they claim it was a contract between Defendant S. Siddig and Ms. Doe's father. In other words, Defendants claim that Ms. Doe's father sold her services to the Defendants without any consent or involvement of Ms. Doe and without intending to benefit or act on behalf of Ms. Doe.

2d 81, 83 (Va. 1995) ("[I]t has been held, for two centuries or more, that any one for whose benefit the contract was made may sue upon it." (quoting *Thacker v. Hubard*, 122 Va. 379, 387 (1918)).  This rule has been codified in Virginia since 1848, including its current version in Va. Code § 5-22.  "The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain."  *Levine,* 250 Va. At 285 (collecting cases). In order to enforce such a contract, the third-party beneficiary need only show, or here allege, that "the parties to the contract clearly and definitely intended it to confer a benefit upon [her]." *Id.*  In the Amended Complaint, Ms. Doe has alleged that in return for her services as a domestic servant and nanny, Defendants agreed to pay her at least the federal statutory minimum wage for all time worked, with payments to be divided 50 percent to Ms. Doe and 50 percent to her parents in Sudan.  Amended Compl. ¶¶ 14, 61.  This statement more than adequately alleges that the parties to the contract clearly and definitely intended to confer a benefit upon Ms. Doe through the wages to be paid for her services.  Under Virginia law, Ms. Doe may sue Defendants for failing to uphold their portion of the bargain by not paying all of the wages due.

Alternatively, if Ms. Doe was not an intended beneficiary of the contract, which she clearly was, any actions taken by Ms. Doe's father were as her agent and representative, acting on behalf of a minor child.  This was, after all, a contract for Ms. Doe's services as a domestic servant and nanny.  It is well established under Virginia law (and agency law generally) that an agent with express, implied, or apparent authority may bind a principal to contract.  *See e.g., Northfield Inv. Co. v. United Way of America*, 353 S.E. 2d 774, 776-77 (Va. 1987).  Moreover, under well and long-established Virginia law, such a contract with an infant is not void, only

22

voidable by the infant upon attaining the age of majority.  *Zelnick v. Adams*, 263 Va. 601, 608 (Va. 2002).

Ms. Doe's breach of contract claims are also not barred by the statute of limitations. Defendants correctly identify the relevant five-year limitations period.  Va. Code § 8.01-246(2). However, Defendants completely misunderstand when Ms. Doe's causes of action accrue. Defendants apparently believe that the statute of limitations expires five years after the contract was first breached (although they concede the statute of limitations tolls until Ms. Doe reached the age of majority).  Mot. to Dismiss at 11-12.  Under Virginia law, each time Defendants failed to pay Ms. Doe her contractually agreed-upon wages, a new and discrete breach of contract occurred, giving rise to a new a cause of action.  *See Am. Physical Therapy Ass'n v. Fed'n of State Bds. of Physical Therapy*, 628 S.E. 2d 928, 929-30 (Va. 2006); *see also Hampton Roads Sanitation Dist. v. McDonnell*, 360 S.E. 2d 841 (Va. 1987).  The Virginia Supreme Court has distinguished between a "single continuing breach" of contract, where "the wrongful act is of a permanent nature and one that produces 'all the damage which can ever result from it,'" and "series of separate breaches," where the wrongful acts occur at "intervals" and "each occurrence inflicts a new injury and gives rise to a new and separate cause of action."  *Am. Physical Therapy Ass'n*, 628 S.E.2d at 929.  In other words, the Virginia Supreme Court has distinguished between situations where there are additional damages resulting from the original, continuing breach, in which case the entire action accrues at the time of the initial breach, and situations where there are discrete breaches that each cause new injuries, in which case each new breach gives rise to a new cause of action.

In this case, there were a series of discrete breaches by the Defendants, occurring at intervals each time Ms. Doe was not paid the contractually agreed-upon wages.  The failure of

Defendants to pay the agreed-upon wages in August 1990 caused unpaid wage damages in August 1990.  That breach was not "of a permanent nature"; it did not produce the unpaid wage damages caused by Defendants' separate breaches in the months and years following the first breach.  This case is indistinguishable from *American Physical Therapy Ass'n*, where the Virginia Supreme Court held that each time the defendant imposed a new fee in violation of the contract, "a new injury occurred and a separate cause of action accrued."  Likewise, in *Corinthian Mortgage Corp. v. ChoicePoint Precision Marketing, LLC*, No. 07-cv-832, 2008 WL 2776991, at *4-5 (E.D. Va. July 14, 2008), the Eastern District of Virginia held that each month a company processed a new work order in violation of its contract, there was a new injury giving rise to a new cause of action.  In short, each time Defendants failed to pay the agreed-upon wages, they separately breached the contract and caused discrete new injuries to Ms. Doe.

Where, like here, there are a series of separate breaches, a plaintiff is "entitled to bring its claims for those breaches of contract that occurred in the five years preceding its filing of this suit."  *Am. Physical Therapy Ass'n*, 628 S.E.2d at 930.  Consequently, Ms. Doe is entitled to bring claims for each month that she was not paid the contractually agreed-upon wages (as she was paid monthly) dating back to July 2005, five years preceding the filing of the Complaint.  Moreover, as explained above, Ms. Doe claims prior to July 2005 should be tolled.  As a result, Ms. Doe may seek breach of contract damages dating all the way back to August 1990 when Defendants first failed to pay Ms. Doe the contractually agreed-upon wages.

### E.    Fifth Claim: Fair Labor Standards Act.

Ms. Doe has more than adequately pled all of the elements for a claim for failure to pay the requisite minimum wage under the Fair Labor Standards Act ("FLSA").   Ms. Doe's Amended Complaint states unequivocally that Defendants made "Ms. Doe work or be available to work *around the clock*." Amended Compl.¶ 21.  Ms. Doe has further alleged she  was forced

24

to work long hours, seven days a week, starting early in the morning until late at night, without any vacation or sick leave. *Id*. ¶¶ 2, 17, 19, 42, 80. The litany of daily chores specifically described in the Amended Complaint further supports Ms. Doe's allegation that she worked from dawn until night caring for the Siddig family members, including infants and house guests. *Id*. ¶ 17.

Ironically, Defendants' own admissions, inappropriately titled "facts" in Defendants' Motion to Dismiss, completely support Ms. Doe's FLSA allegations. First, the Defendants readily acknowledge that Ms. Doe was an employee and "worked for the Siddig [sic]" for nineteen years. Mot. to Dismiss at 4. Defendants admit that Ms. Doe did both housework and child care. *Id*. And Defendants admit that the work she did within the home consisted of "maximum of four hours of child care and/or housework a day."[12] *Id*.

Ms. Doe's Amended Complaint alleges that she was only paid $100 per month from 1990 to 1999 or 2000 (approximately $3.29 per day). In order for the Defendants to have compensated her "justly" for the work she did in their home, Ms. Doe could have worked (on average) less than an hour a day from 1990-1991, forty-seven (47) minutes per day from 1992-1996, forty-one (41) minutes per day through 1997, and thirty-six (36) minutes a day through 1999.[13] The Amended Complaint alleges that Defendants raised her salary to $150 per month

---

[12] Defendants' utterly inaccurate assertion that Ms. Doe worked a maximum of four hours a day is contradicted by the facts asserted in Ms. Doe's Amended Complaint, the only set of facts relevant to this discussion. Defendants' attempt to introduce their own competing facts in support of their Motion to Dismiss is grossly inappropriate. Indeed, this Court cautioned Defendants' counsel against just such an action. But to the extent the representations made to this Court constitute admissions, Ms. Doe intends to rely on those statements.

[13] The federal minimum wage rates during relevant time periods are as follows:

| Start Date | Minimum Wage |
|---|---|
| April 1, 1990 | $3.80 |
| April 1, 1991 | $4.25 |

from 1999 or 2000 to 2006 (approximately $4.93 per day), and $200 per month from 2006 to 2009 (approximately $6.58 per day).  *Id.* ¶ 3.

Based on the allegations in the Amended Complaint, Defendants never paid Ms. Doe for more than 1.12 hours per day under the relevant minimum federal wage.  And often, Defendants effectively paid Ms. Doe for less than one hour of work per day.  By Defendants' own admission, Ms. Doe worked up to four hours each day.  Mot. to Dismiss at 4.  Ms. Doe has pled quite clearly that she worked every day, from morning until night – far more than the 1.12 hours each day for which she was compensated.  Amended Compl. ¶ 17.  Taking these facts as true, Ms. Doe has pled sufficient allegations to support the conclusion that the Defendants failed to pay a significant amount in minimum wages under the FLSA.[14]  The Defendants have cited no case law asserting that these detailed facts are insufficient.  Indeed, they cannot do so.  Plaintiff's amended pleading "give[s] the defendant[s] fair notice of the [plaintiff's] claim[s] and the grounds upon which [they] rest[ ]." *Twombly*, 550 U.S. at 555.

Defendants' argument that Ms. Doe has failed to state a claim because she failed to account for meals and housing is unavailing.  The Department of Labor regulations concerning these deductions provide that an employer may not include in the calculated wage the cost of furnishing ''facilities'' that are primarily for the benefit or convenience of the employer.  29

|  |  |
|---|---|
| October 1, 1996 | $4.75 |
| September 1, 1997 | $5.15 |
| July 24, 2007 | $5.85 |
| July 24, 2008 | $6.55 |
| July 24, 2009 | $7.25 |

29 U.S.C. § 206(a); *see also* U.S. Dep't of Labor, Wage and Hour Division, *History of Federal Minimum Wage Rates Under the Fair Labor Standards Act, 1938 – 2009* (last accessed Feb. 10, 2011), *available at* http://www.dol.gov/whd/minwage/chart.htm.

[14] Moreover, Ms. Doe has already provided Defendants with a more definite calculation of her damages under the Fair Labor Standards Act as part of her initial disclosures.

26

C.F.R. § 531.32(c).  Such facilities include "housing furnished for dwelling purposes."  *Id.* § 531.32(a).  Ms. Doe has alleged that the Defendants forced her to "work or to be available to work around the clock."  Amended Compl. ¶ 21.  The allegation that Ms. Doe be available and on call "around the clock" strongly suggests that her housing was indeed furnished for the convenience of the employer.  Under the facts as pled in the Amended Complaint, which must be accepted as true for purposes of this motion, Ms. Doe would not be responsible for these costs.

Moreover, a FLSA plaintiff has no obligation to plead any offsets for meals and housing.  As the case law amply demonstrates, the burden is on the employer to *prove* that he is entitled to such offsets.  *E.g.*, *Marroquin v. Canales*, 505 F. Supp. 2d 283 (D. Md. 2007); *Bueno v. Mattner*, 633 F. Supp. 1446, 1453 (W.D. Mich. 1986), *aff'd* 829 F.2d 1380 (6th Cir. 1987) (holding that defendant was not entitled to credit for housing provided to migrant workers, where the defendant provided no evidence concerning the value of the housing).  Such issues are simply not germane at the motion to dismiss stage.

Defendants are correct that actions under the FLSA generally must be brought within two years; however, there is an exception where, like here, the plaintiff alleges a willful violation, in which case the statute of limitations is three years.  *See* 29 U.S.C. § 255(a) (providing that FLSA actions must be commenced "within two years after the cause of action has accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action has accrued").  Ms. Doe has alleged a willful violation on the part of Defendants and is thus subject to the three-year limitations period.  *See, e.g.*, Amended Compl. ¶¶ 66, 68.  Violations are willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 617 (1993).  Ms.

Doe has adequately pled that the Siddig Defendants knew that they were required to pay the statutory minimum wage: the contract that Defendants drafted and executed stated this fact plainly.   Amended Comp. ¶ 14.   That Defendants drafted and executed a contract promising federal minimum wage and then paid Ms. Doe far less demonstrates a willful violation of the FLSA and thus invokes the longer three-year statute of limitations.

In addition, Ms. Doe is entitled to bring claims dating all the way back to 1990 based on equitable tolling.   Numerous courts have held that "the failure to post [notices pursuant 29 C.F.R. § 516.4] advising employees of the right to earn minimum wage and overtime compensation equitably tolls the statute of limitations until an employee has actual notice of his or her rights under the FLSA."[15]   *See, e.g.*, *Summa v. Hofstra University*, 715 F. Supp. 2d 378, 387 (E.D.N.Y. 2010); *Jemine v. Dennis*, No. CV 2008-3072, 2009 WL 837802, at *1 n.1 (E.D.N.Y. Mar. 26, 2009); *Cortez v. Medina's Landscaping, Inc.*, No. 00-CV-6320, 2002 WL 31175471, at *6 (N.D. Ill. Sept. 30, 2002); *Baba v. Grand Central Partnership*, No. 99 Civ. 5818 (TPG), 2000 WL 1808971, at *2 (S.D.N.Y. Dec. 8, 2000); *Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324, 328 (E.D. Pa. 1984); *see also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007).   Moreover, for the reasons explained in Section II, the statute of limitations should be tolled until July 26, 2008.   In short, none of Ms. Doe's FLSA claims should be barred by the statute of limitations.

---

[15] Defendants did not post requisite FLSA notices under 29 C.F.R. § 516.4 in their household. Ms. Doe, who could not speak English and was not permitted to leave the house alone, (Amended Compl. ¶¶ 28, 30, 31), was not aware of her rights under the FLSA.  To the extent that the Court does not otherwise permit equitable tolling, Ms. Doe requests the Court's permission to amend her complaint to include the allegation that Defendants failed to post the notices in their home.

F.      **Sixth Claim: False Imprisonment.**

Ms. Doe has sufficiently pled all of the elements for false imprisonment.   "False imprisonment is <u>restraint of one's liberty</u> without any sufficient legal excuse therefor <u>by word or acts which he fears to disregard</u>, and neither malice, ill will, nor the slightest wrongful intention is necessary to constitute the offense."   *Montgomery Ward & Co. v. Wickline*, 50 S.E. 2d 387, 388 (Va. 1948) (quotation marks omitted; emphasis added); *see also Zayre of Va., Inc. v. Gowdy*, 147 S.E. 2d 710, 713-14 (Va. 1966); *S.H. Kress & Co. v. Musgrove*, 149 S.E. 453, 455 (Va. 1929).   "A claim for false imprisonment includes the following elements: 1) an intentional restriction of a person's freedom of movement without legal right and 2) the intentional use of force, words, or acts which the person restrained is afraid to ignore or to which he reasonably believes he must submit."   *Zahand v. United Airlines, Inc.*, 35 Va. Cir. 72, 1994 WL 1031381, at *3 (Va. Cir. 1994); *see also* Virginia Practice Series, Tort and Personal Injury Law § 3:11 (2010) (collecting cases).   These cases make clear that words or actions by a party that have the effect of restraining the plaintiff's freedom of movement without legal justification are sufficient to constitute false imprisonment.

Contrary to Defendants' assertions, Ms. Doe has properly alleged false imprisonment. Ms. Doe alleged that "Defendants terrified [her] with stories that she would be kidnapped or arrested if she were ever to leave their home,"  Amended Compl. ¶ 29.  "Defendants convinced Ms. Doe that she would suffer serious harm and would be arrested if she attempted to leave the house."  *Id.* ¶ 44.   Ms. Doe was told that she could not leave their house alone.   *Id.* ¶ 28. Defendants further isolated Ms. Doe and prevented her from leaving their house by confiscating her passport, deceived her about her immigration status, and limited her ability to communicate with her family.   *Id.* ¶¶ 7, 28, 32, 33, 44, 53, 57, 70.   Indeed, when Ms. Doe "finally made contact with a relative who later moved to the United States, [Defendant S. Siddig] became

29

angry and attempted to hit Ms. Doe" further frightening and isolating her. *Id.* ¶ 34. Based on the foregoing, Ms. Doe feared leaving the house alone and was conscious of being confined in the house because of Defendants' threats and acts. *Id.* ¶¶ 29, 70-71. Ms. Doe alleged that "Defendants confined Ms. Doe knowingly and willfully," "with reckless disregard for her rights" (i.e., without legal justification). *Id.* ¶ 72. These allegations more than sufficiently state a claim for false imprisonment.

Defendants are correct that false imprisonment has a two-year statute of limitations. *See Jordan v. Shands*, 500 S.E. 2d 215, 218 (Va. 1998). However, the long-established rule is that the statute of limitations for false imprisonment begins to run "when the alleged false imprisonment ends." *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (quotation marks omitted). As the Supreme Court explained, "[t]he running of the statute of limitations on false imprisonment is subject to a distinctive rule – dictated, perhaps, by the reality that the victim may not be able to sue while he is still imprisoned." *Id.* While Plaintiff is not aware of a direct Virginia case on point, this rule has been uniformly applied in courts across the country. *See, e.g.*, *Warren v. Byrne*, 699 F.2d 95, 97 (2d Cir. 1983); Restatement (Second) of Torts § 899, cmt. c (1977) ("For false imprisonment, the statute begins to run only when the imprisonment ends, since the period of imprisonment is treated as a unit."); 32 Am. Jur. 2d False Imprisonment § 108 ("An action for false imprisonment generally accrues, for limitations purposes, on the termination of the imprisonment or confinement . . . .") (collecting cases).

Based on the relevant case law, Defendants are simply wrong that Ms. Doe is barred from bringing her cause of action based on conduct that occurred more than two years prior to the filing of the complaint. Mot. to Dismiss at 15. Rather, the relevant question is whether the false imprisonment that Ms. Doe alleges ended more than two years prior to her filing suit. In this

case, viewing the facts in the light most favorable to Ms. Doe, Ms. Doe has alleged that her false imprisonment began in 1990 and did not end until July 26, 2008, when Ms. Doe traveled to Sudan alone.   Amended Compl. ¶ 30.   As a result, Ms. Doe's claims are not barred by any statute of limitations.[16]

### G.   Seventh Claim: Fraudulent Inducement.

Ms. Doe has properly alleged all of the elements for fraudulent inducement.   The elements of fraud in Virginia, as Defendants are well aware (Mot. to Dismiss at 17), are: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 439 S.E. 2d 387, 390 (Va. 1994).   Without any legal support whatsoever, Defendants have attempted to add a fictitious new element: direct communication.   Defendants assert that in order to state a claim for fraudulent inducement (or fraud), the misrepresentation at issue must have been made directly to the plaintiff by the defendant in order for the plaintiff to have reasonably relied on the statement.   Mot. to Dismiss at 14-15, 18.   But under long-established, black-letter law, there is no such direct statement requirement. *See, e.g.*, *Sempione v. Provident Bank of Maryland*, 75 F.3d 951, 962-63 (4th Cir. 1996); *Nernberg v. Pearce*, 35 F.3d 247, 250-51 (6th Cir. 1994); *Learjet Corp. v. Spenlinhauer*, 901 F.2d 198 (1st Cir. 1990). "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss to another who acts in justifiable reliance upon it if the misrepresentation, although not made directly to the other, is made to a third person and the maker intends or has reason to expect that its terms will be repeated or its substance communicated to the other, and

---

[16] The tolling arguments from Section II likewise apply to the false imprisonment claims. Furthermore, to the extent that Defendants falsely imprisoned Ms. Doe following her return from Sudan in October 2008, Defendants concede that those claims are within the limitations period. Mot. to Dismiss at 15.

that it will influence his conduct in the transaction or type of transaction involved." Restatement (Second) of Torts § 533 (1977); *see also* 37 Am. Jur. 2d Fraud and Deceit § 109 (2010 update) ("While some connection, direct or indirect, between a party charged with making false representations and a party relying thereon must be shown, it is not essential, in support of a cause of action for damages resulting from false representations, that the false representations be shown to have been made directly to the party claiming to have relied upon them."). To the extent any communications were made by the Defendants to Ms. Doe's father, the Defendants had every reason to expect that they would be repeated to Ms. Doe and that she would rely on those statements. Furthermore, to the extent Ms. Doe's father was involved in the negotiation of Ms. Doe's employment contract, he was acting as an agent and representative of Ms. Doe. Thus, any statements made by the Defendants to Ms. Doe's father were necessarily also made to Ms. Doe.

Moreover, Defendants also incorrectly assert that "Plaintiff alleges all of the communications, conversations, and agreements relating to her moving to the United States were between her father . . . and Siddig." Mot. to Dismiss at 14. Unsurprisingly, Defendants provide no citation for this allegation because it does not exist in the Amended Complaint. Indeed, there is not a single reference to Plaintiff's father in the Amended Complaint, let alone a reference to this allegation. Rather, the Amended Complaint alleges that "the Defendants intentionally and knowingly misrepresented to Ms. Doe the conditions of her employment and conditions in the United States in order to induce her to come to the United States, under the pretense that, *inter alia*, Ms. Doe would attend school and be treated by the Defendants like their own daughter." Amended Compl. ¶ 77; *see also id.* ¶¶ 5, 13. This is just one among many egregious examples

where the Defendants have inappropriately substituted their own facts in place of the facts alleged in the Amended Complaint.

Defendants have correctly identified that a fraudulent inducement claim is subject to a two-year statute of limitations under Virginia law.  Va. Code § 8.01-243(A).  However, for the reasons explained in Section II, the statute of limitations should be tolled until July 26, 2008, and thus Ms. Doe's claim should not be dismissed.

### H.      Eighth Claim: Unjust Enrichment.

Ms. Doe has sufficiently pled all three elements for a claim of unjust enrichment.  Under Virginia law, a claim for unjust enrichment requires: (1) that the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to pay for the benefit; and (3) the defendant accepted or retained the benefit without paying for its value.  In other words, a plaintiff must alleged that he or she provided "a benefit to the defendant" and "raise an implication that the defendant promised to pay the plaintiff for such benefit."  *Nedrich v. Jones*, 429 S.E. 2d 201, 207 (Va. 1993).  Ms. Doe has easily met that burden.  In the Amended Complaint, Ms. Doe alleged: (1) that she conferred a benefit on the Defendants by rendering services as a live-in domestic servant to the Defendants for nearly nineteen years in good faith, Amended Compl. ¶ 87; (2) the Defendants knew about these services (including by forcing Ms. Doe to work long hours, seven days a week, starting early in the morning until late at night, and without vacation) and explicitly agreed to pay her for all time worked, *id.* ¶¶ 14, 17-19, 42, 61, 80, 88; and (3) the Defendants accepted these services but failed to pay Ms. Doe for the value of her services, *id.* ¶88; *see also id.* ¶¶ 3, 17-19.  These allegations are more than sufficient to state a claim for unjust enrichment.

Defendants' argument (again without any legal support) that Ms. Doe failed "to specifically plead the true wages paid to Doe, including boarding and lodging" is completely

meritless.  Mot. to Dismiss at 15-16.  As an initial matter, Defendants' argument is ambiguous since it is not tied to any of the three elements for unjust enrichment or any case law.  Plaintiff's best understanding is that Defendants believe that: (1) any unjust enrichment claim must be reduced by "boarding and lodging" and (2) Plaintiff is somehow obligated to provide an exact damages estimate in her complaint.  Neither belief is correct.  First, Ms. Doe's claim for unjust enrichment cannot be reduced by "boarding and lodging" expenses because nothing in her Amended Complaint indicates that there was either an express or implied contract requiring that her compensation be lowered by that amount.  As noted earlier, Ms. Doe lived with the Defendants as a convenience to them, so that she could be available at all hours as a nanny and domestic servant.  Nothing in the Amended Complaint suggests that Ms. Doe agreed or reasonably believed that her compensation would be lowered based on the cost of "boarding or lodging."  Indeed, Defendants have scuttled their own argument with an important admission: that Doe was to be paid — under the original contact terms — minimum wage plus free shelter, food, and clothing.[17]  Mot. to Dismiss at 3 (explaining that Defendants were "to provide [Doe] with shelter, food, and clothing . . . as well as minimum wage"); *id.* ("For nineteen (19) years Doe worked for Siddig.  In return, she was paid minimum wage plus free housing, . . . was fed for free, and was clothed for free.").

---

[17] Moreover, while it is true that the Fair Labor Standards Act permits an employer under certain circumstances to include boarding and lodging expenses in determining whether that employer has paid the requisite federal minimum wage, 29 U.S.C. § 203(m), nothing in that Act *obligates* an employee to pay for the cost of boarding and lodging.  Absent an agreement between the employer and the employee for the employee to pay for boarding and lodging, there is no obligation for the employee to pay those expenses.  Indeed, the State Department's *Foreign Affairs Manual* concerning A-3 visas explains that "[u]nder prevailing practice, live-in domestics receive free room and board in addition to their salary."  9 U.S. Department Of State, Foreign Affairs Manual § 41.22N4.3 (2010), *available at* http://www.state.gov/documents/organization/87177.pdf

Second, Defendants apparently mistakenly believe that Ms. Doe must plead in her complaint an exact damages figure (or "true wages paid" as Defendants call them). This is incorrect. As Defendants note only one paragraph earlier (Mot. to Dismiss at 12), under Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted). As described earlier, Ms. Doe has given the Defendants fair notice of her claims and the grounds upon which they rest. In fact, Ms. Doe has alleged several specific facts with respect to damages, including that she was forced to work long hours, seven days a week, starting early in the morning until late at night, and without any vacation or sick leave. Amended Compl. ¶¶ 2, 17, 19, 42, 80. Ms. Doe further alleged that she was only paid $100 per month from 1990 to 1999 or 2000 (approximately $3.29 per day), $150 per month from 1999 or 2000 to 2006 (approximately $4.93 per day), and $200 per month from 2006 to 2009 (approximately $6.58 per day). *Id.* ¶ 3. Thus, Ms. Doe has more than sufficiently alleged that Defendants owe her some amount of damages (i.e., the third element of unjust enrichment, that Defendants failed to pay Ms. Doe for the full value of her services). That is all that is necessary to state a claim for relief.

Defendants have not asserted a statute of limitations defense to any or all of Ms. Doe's claim for unjust enrichment.

### I.        Ninth Claim: Quantum Meruit.

Defendants' cut-and-paste arguments with respect to quantum meruit fare no better than their arguments concerning unjust enrichment. The Virginia Supreme Court has explained that recovery for quantum meruit "is based upon an implied contract to pay the reasonable value of services rendered." *Mongold v. Woods*, 677 S.E. 2d 288, 292 (Va. 2009). "Where service is performed by one, at the instance and request of another, and . . . nothing is said between the

35

parties as to compensation for such service, the law implies a contract, that the party who performs the service shall be paid a reasonable compensation therefor.  The remedy available to the plaintiff is an award of damages amounting to the reasonable value of the work performed, less the compensation actually received for that work." *Id.* (internal citations and quotation marks omitted).[18]  As alleged in the Amended Complaint, Ms. Doe performed live-in domestic services at the insistence and request of the Defendants for nearly nineteen years.  *E.g.*, Amended Compl.   ¶¶ 2, 17-19.  In that role, Defendants forced Ms. Doe to work long hours, seven days a week, starting early in the morning until late at night, and without any vacation or sick leave.  *Id.* ¶¶ 2, 17, 19, 42, 80.  For those services, Ms. Doe was not paid reasonable compensation for her work, and instead was only paid $100 per month from 1990 to 1999 or 2000 (approximately $3.29 per day), $150 per month from 1999 or 2000 to 2006 (approximately $4.93 per day), and $200 per month from 2006 to 2009 (approximately $6.58 per day).  *Id.* ¶¶ 3, 88, 95.  Ms. Doe is entitled to an award of damages in quantum meruit equal to the reasonable value of the work performed, less the compensation actually received for that work.  As with her allegations for unjust enrichment, allegations sufficiently state a claim for quantum meruit.  Defendants' argument concerning the failure "to specifically plead the true wages paid to Doe" fails for the same reasons as it did with respect to unjust enrichment.  *See supra* Section III.J.

Defendants have not asserted a statute of limitations defense to any or all of Ms. Doe's claim for quantum meruit.

---

[18] This cause of action is pleaded in the alternative to the express, written contract that Ms. Doe has alleged.

**J.      Tenth Claim: Intentional Infliction of Emotional Distress.**

Defendants' arguments on this claim are limited to asserting that they should be partially barred by the statute of limitations, which Defendants correctly identify as two years.  *See Luddeke v. Amana Refrigeration, Inc.*, 387 S.E. 2d 502, 504 (Va. 1990).  Defendants concede that some of the conduct Ms. Doe complains about occurred within the two-year limitations period.  That conduct includes that Defendants used their position of power and control over Ms. Doe to engage in a pattern of outrageous verbal and psychological abuse against her, Amended Compl. ¶¶ 21-23, 99, and prevented Ms. Doe from contacting or being contacted by her family, thereby exacerbating her suffering, *Id.* ¶¶ 32, 33, 34, 101.  Moreover, for the reasons explained in Section II, the statute of limitations for this claim should be tolled until July 26, 2008, and thus none of Ms. Doe's claims should be dismissed.

**K.      Eleventh Claim: Fraud.**

As she did with her claim for fraudulent inducement, Ms. Doe has properly alleged all of the elements of fraud.  *See supra* Section III.G.  Defendants complain that Ms. Doe failed to plead damages, the final element of fraud, because she did not "allege[] she would have been in a better position had she remained in Sudan." Mot. to Dismiss at 18.  Like most of their other arguments, Defendants fail to provide any statutory or case law to support their bald assertion. Apparently, Defendants incorrectly believe that a claim for fraud allows only for lost opportunity cost damages (i.e., that Ms. Doe should be compensated for the lost opportunity to remain in Sudan).  Ms. Doe is aware of no case law limiting damages for fraud to lost opportunity cost damages.  Rather, the cases generally discuss that a defendant is liable for any "resulting damage to the party misled" caused by his or her fraud.  *Evaluation Research Corp. v. Alequin*, 439 S.E. 2d 387, 390 (Va. 1994).  In this case, Ms. Doe has more than sufficiently alleged that she suffered resulting damages caused by Defendants' fraud, including unpaid wages, emotional

distress, and physical injury.   Amended Compl. ¶¶ 20, 23, 24-27, 63, 88, 95, 102, 108, 110.

Moreover, though not required, Ms. Doe also alleged certain lost opportunity cost damages:

"whereas Ms. Doe's siblings have attended college in their home country, because of

Defendants' fraud, Ms. Doe was unable to gain an education, causing her to suffer substantial

lost income." *Id.* ¶ 110.

In addition, Defendants repeat their mistaken belief that a claim for fraud in Virginia

requires reliance by a plaintiff on a direct communication with the defendant.   For all of the

reasons explained in Section III.G, that argument is entirely without merit (and, in any event,

also not based on allegations in the Amended Complaint).   Furthermore, unlike Ms. Doe's claim

for fraudulent inducement, which was based only on representations prior to her first coming to

the United States, Ms. Doe's claim for fraud is also based on continuing misrepresentations by

the Defendants to Ms. Doe while she was living with them in the United States.   Amended

Compl. ¶ 106.  Defendants' arguments miss the mark.

Finally, Defendants have not asserted a statute of limitations defense to any or all of Ms.

Doe's claim for fraud.

### L.        Twelfth Claim: Negligent Infliction of Emotional Distress.

As with the intentional infliction of emotional distress claim, Defendants argue only that

this claim should be barred in part by the statute of limitations, which Defendants correctly

identify as two years.  *See Luddeke v. Amana Refrigeration, Inc.*, 387 S.E. 2d at 504 (Va. 1990).

Defendants concede that some of the conduct Ms. Doe complains about occurred within the two-

year limitations period.   That conduct includes that Defendants negligently required Ms. Doe to

use cleaning supplies that caused Ms. Doe to develop scars, rashes, and peeling skin, Amended

Compl. ¶¶ 20, 25, 115, and failed to obtain prompt, appropriate medical and dental care, *id.* ¶¶

24, 116.   Moreover, for the reasons explained in Section II, the statute of limitations for this

claim should be tolled until July 26, 2008, and thus none of Ms. Doe's claims should be dismissed.

### M.        Thirteenth Claim: Negligence.

Ms. Doe has sufficiently stated a claim for negligence under Virginia law.  Defendants argue that Ms. Doe's claim must be dismissed because they do not owe a heightened duty to Ms. Doe.  As a legal matter, Defendants did owe Ms. Doe a heightened duty of care under Virginia law.  Virginia courts have repeatedly held that there is a special relationship between an employer and employee, giving rise to a heightened duty of care.  *See, e.g.*, *Kellermann v. McDonough*, 684 S.E.2d 786, 793 (Va. 2009).  This special relationship imposes, for example, a duty upon an employer to control the conduct of a third person causing reasonably foreseeable danger to the employee.  *Id.*  Ms. Doe has stated just this type of claim. She repeatedly requested that Defendants protect her from their adult, disabled child who hit her on multiple occasions.  Amended Compl. ¶ 25. Likewise, Virginia courts have held that employers have an affirmative duty to furnish a "reasonably safe place in which to work."  *Blue Diamond Coal Co. v. Aistrop*, 31 S.E.2d 297, 297 (1944); *see also* W. Page Keeton et al., *Prosser and Keeton on Torts* § 92, at 663 (5th ed. 1984) (explaining that employer-employee relationship gives rise "to a duty of affirmative care" to "furnish a safe place to work or proper tools" (footnotes omitted)).  Based on this affirmative duty, Ms. Doe has easily stated a claim for negligence for requiring her to use harsh chemicals that the Defendants knew were causing injury to her.  Amended Compl. ¶ 25. Moreover, as property owners, Defendants owed "the highest duty of care" to Ms. Doe, "an invitee, a person who enters upon invitation by the landowner and for the common interest or mutual benefit of the landowner and the guest."  *King v. Island Creek Coal Co.*, 339 F. Supp. 2d 735, 742 (W.D. Va. 2004).   Finally, during Ms. Doe's first four years with Defendants, Defendants owed Ms. Doe a special duty of care as a minor child, including a duty to obtain

ordinary or necessary medical treatment.[19]  *Cf.* Va. Code § 18.2-371.1 (providing that it is a Class 4 felony for "[a]ny parent, guardian, or other person responsible for the care of a child under age 18 who by willful act or omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child").   Based on all these heightened and affirmative duties of care, Ms. Doe has easily stated a claim for negligence.

Furthermore, even if Defendants are correct that they did not owe Ms. Doe a heightened duty of care, which they are not, Ms. Doe has still stated a claim for relief.  Defendants concede that they owed Ms. Doe a duty of ordinary care.  Under Virginia law, that duty of ordinary care required them "to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another."  *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004).  It is a question of fact whether Defendants – having taken Ms. Doe into their home as a live-in domestic servant, knowing that Ms. Doe was unfamiliar with U.S. customs and institutions, was unable to speak English, and was utterly dependent on them for access to medical care, dental care, income, shelter, food, and immigration status, Amended Compl. ¶ 120 – exercised that degree of care that ordinarily prudent person would exercise under the same or similar conditions.  Ms. Doe has more than sufficiently stated a claim that the failure to select cleaning products that would not injure her health (especially after recognizing that the products they selected were injuring her); the failure to protect her from a known risk from Defendants' disabled child; and the failure to obtain prompt, appropriate medical and dental care

---

[19] Yet again, Defendants have failed to apply the facts as alleged in the complaint.  Defendants' entire argument on this claim is based on facts that "Doe's parents fraudulently represented Doe as an adult" and that Defendant S. Siddig "believed [Ms. Doe] to be an adult."  Mot. to Dismiss at 18-19.  In contrast, the allegations in the complaint are that Defendants were aware of Ms. Doe's age, and Defendants or their agents misrepresented Ms. Doe's age on her travel documents in order to traffick her into the United States.  Amended Compl. ¶ 4.

(especially after repeated requests) breached Defendants' ordinary duty of care to Ms. Doe under the circumstances. *Id.* ¶¶ 24-27, 121-23.

Defendants have not asserted a statute of limitations defense to any or all of Ms. Doe's claim for negligence.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety.


Dated: February 11, 2011                    Respectfully submitted,

                                   By:_____ _____/s/_____
                                        Martina E. Vandenberg (DC Bar No. 476685)
                                        David Z. Moskowitz (DC Bar No. 994469)
                                        JENNER & BLOCK LLP
                                        1099 New York Ave., N.W., Suite 900
                                        Washington, D.C. 20001
                                        (p) 202-639-6000
                                        (f) 202-639-6066
                                        mvandenberg@jenner.com
                                        dmoskowitz@jenner.com

                                        *Counsel for Plaintiff Jane Doe*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2011, I caused copies of the foregoing to be transmitted via ECF and email to the following counsel:

Nicole E. Mackin
The Law Office of Nicole Mackin
1629 K Street, N.W., Suite 300
Washington D.C. 20005
(p) 571-226-6926
(f) (888) 266-0046
NMackin@MissCriminalLawyer.com

*Counsel for Defendants*


_____/s/_____
David Z. Moskowitz