# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JANE DOE,

   Plaintiff,

 v.

SAFWAT HASSAN SIDDIG, and

KAWTHAR HASSAN SULIMAN, a.k.a.
KAWTHAR SIDDIG,

   Defendants.

Civil Action No. 10-1256 (CKK)

## MEMORANDUM OPINION
(September 12, 2011)

Plaintiff Jane Doe[1] brings this action against Defendants Safwat Hassan Siddig ("S.

Siddig") and Kawthar Hassan Suliman, a.k.a. Kawthar Siddig, asserting a variety of claims in

connection with her nineteen years of employment in Defendants' household as a self-described

domestic servant and nanny. Presently before the Court is Defendants' [18] Motion to Dismiss

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Motion to Dismiss"). Upon

consideration of the parties' submissions, the relevant authorities, and the record as a whole, the

motion shall be GRANTED-IN-PART and DENIED-IN-PART.[2]

---

[1] For the time being, Plaintiff is being allowed to proceed in this action anonymously. *See* Order (July 26, 2010), ECF No. [2].

[2] While the Court's decision today rests upon the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: First Am. Compl. ("Compl."), ECF No. [16]; Br. & Mem. of Law in Support of Def.'s [sic] Mot. to Dismiss ("Defs.' Mem."), ECF No. [18]; Pl.'s Mem. of P. & A. in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. [19].

# I. BACKGROUND

Doe is a thirty-four-year-old Sudanese citizen living in the United States. Compl. ¶ 10. She claims that Defendants "trafficked" her into the country over two decades ago in order to benefit from her "forced labor" and thereafter subjected her to "false imprisonment" and "involuntary servitude" for the succeeding nineteen years. *Id.* ¶ 1.

## A.    *Factual Background*

In 1990, Doe was a fourteen-year-old minor living with her family in Sudan.[3] Compl. ¶ 12.[4] She was a primary school student and did not speak English. *Id.* ¶¶ 12, 31, 43. S. Siddig, an official or employee at the Sudanese Embassy in Washington, D.C., approached Doe and her family with an offer—in exchange for Doe moving to the United States to serve as a domestic servant and nanny in Defendants' household, S. Siddig promised that Doe would be paid the federal statutory minimum wage, would attend school in the United States, would be allowed to return to Sudan to visit her family regularly, and would be "raised like a daughter." *Id.* ¶¶ 6, 11, 13. In connection with these promises, S. Siddig drafted and executed a written contract, which provided that Doe would earn the federal statutory minimum wage, with half of her earnings to be paid to her parents in Sudan. *Id.* ¶ 14.

---

[3] This action was commenced, and the pending Motion to Dismiss was briefed, before the Republic of South Sudan became an independent state on July 9, 2011. It is unclear what relationship the parties have to the Republic of Sudan or the Republic of South Sudan. For purposes of the pending Motion to Dismiss, the Court shall simply use the terminology employed by the parties in briefing the motion.

[4] This factual background is derived from the well-pleaded factual allegations in Doe's First Amended Complaint; those allegations are assumed to be true for purposes of resolving the pending Motion to Dismiss.

Thereafter, S. Siddig obtained an A-3 Non-Immigrant Visa[5] authorizing Doe to enter the United States. *Id.* ¶¶ 4, 15-16. In order to secure the visa, Doe's written employment contract was presented to officials at the United States Embassy in Sudan. *Id.* ¶ 15. According to Doe, S. Siddig or his agents falsely represented Doe's age on her visa and passport applications in order to make her appear as an adult instead of a fourteen-year-old minor. *Id.* ¶ 16.

In 1990, Doe moved to the United States to serve as a domestic servant and nanny in Defendants' household in Woodbridge, Virginia. *Id.* ¶¶ 2, 11. For the next nineteen years, Defendants forced Doe to work long hours seven days a week, without holiday-, vacation-, or sick-leave. *Id.* ¶¶ 2, 17, 19. Her daily responsibilities included cleaning Defendants' home, washing and ironing clothes, cooking meals, and caring for Defendants' four children, including two adult disabled children. *Id.* ¶¶ 17-19. Doe would also periodically care for the children of Defendants' relatives and guests. *Id.* ¶¶ 18-19.

In the nineteen-year period extending from 1990 to 2009, Defendants never paid Doe the federal statutory minimum wage for the hours that she worked. *Id.* ¶¶ 3, 62, 66. Instead, she received $100 per month, approximately $3.33 per day, from 1990 until 1999 or 2000; $150 per month, approximately $5 per day, from 1999 or 2000 until 2006; and $200 per month, approximately $6.66 per day, from 2006 until 2009. *Id.* ¶ 3. Moreover, Doe was ordinarily paid only half of these amounts; she was told that the remainder was sent to her family in Sudan. *Id.*

---

[5] An A-3 Non-Immigrant Visa authorizes personal employees, attendants, domestic workers, or servants of diplomats or foreign government officials to travel to the United States.

Defendants kept Doe isolated from the outside world. *Id.* ¶ 28. Upon her arrival in the United States, they confiscated her passport, prohibited her from leaving the house alone, and told her that if she did ever leave the house alone, "she would be kidnapped or arrested." *Id.* ¶¶ 28-29, 53. As a fourteen-year-old minor, Doe believed these statements and was scared to leave Defendants' home on her own. *Id.* Indeed, Doe did not travel outside Defendants' home alone for sixteen years. *Id.* ¶¶ 28, 36. She did not leave Virginia on her own until 2008, when she was approximately thirty-two years old. *Id.* ¶¶ 6, 30.

Doe was also isolated from her family in Sudan and the United States. *Id.* ¶¶ 32-33, 101. Defendants rarely allowed Doe to speak to her family in Sudan and did not tell her when relatives living in the United States attempted to make contact. *Id.* ¶¶ 32-33. On one occasion, when S. Siddig learned that Doe had made contact with a family member who later moved to the United States, he became angry and attempted to physically strike Doe. *Id.* ¶ 34.

Despite their prior representations, Defendants attempted to prevent Doe from learning English and did not allow her to attend school until the fall of 2005, approximately fifteen years after she arrived in the United States. *Id.* ¶¶ 5, 31. In contrast, nearly all of her siblings in Sudan were able to attend college and obtain an appropriate education. *Id.* ¶¶ 31, 79, 110.

Meanwhile, Defendants constantly subjected Doe to "verbal and psychological abuse," yelling at her when something went wrong in the house or when she did not meet their demands. *Id.* ¶¶ 21-23, 35, 99. Her health also suffered. The harsh cleaning chemicals that Defendants forced Doe to use for her housekeeping responsibilities caused her to "develop[] breathing difficulties" and burned her skin, resulting in "scars, rashes, and peeling skin that continue to disfigure her hands and feet today." *Id.* ¶¶ 20, 25. Additionally, Defendants' adult disabled children physically injured Doe, with one incident resulting in Doe temporarily losing her

hearing. *Id.* ¶ 27. Despite numerous requests, Doe rarely received medical care because Defendants told her that it was too expensive. *Id.* ¶¶ 24, 26, 116.

On August 7, 2009, Doe "escaped" from Defendants' control with assistance from a relative living in the United States. *Id.* ¶¶ 34, 37. Since then, Defendants have continued to try to locate Doe, "demand[ing] to know when she will return." *Id.* ¶ 38.

### B.    *Procedural History*

Doe commenced this action on July 26, 2010. She asserts a total of thirteen claims against Defendants: (1) involuntary servitude pursuant to the Thirteenth Amendment of the Constitution of the United States and 18 U.S.C. §§ 1584, 1595; (2) trafficking for purposes of forced labor in violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1590, 1595; (3) forced labor in violation of the TVPA, 18 U.S.C. §§ 1589, 1595; (4) breach of contract; (5) failure to pay statutory minimum wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; (6) false imprisonment; (7) fraudulent inducement; (8) unjust enrichment; (9) quantum meruit; (10) intentional infliction of emotional distress; (11) fraud; (12) negligent infliction of emotional distress; and (13) negligence. Compl. ¶¶ 40-125.

The Court held an Initial Scheduling Conference on December 1, 2010, during which the Court set an appropriate briefing schedule for the pending Motion to Dismiss. *See* Scheduling & Procedures Order (Dec. 1, 2010), ECF No. [13], at 7. Consistent with the schedule set by the Court, Defendants filed their moving papers on January 21, 2011, and Doe filed a timely opposition on February 11, 2011. Defendants failed to file a reply by the designated deadline or at any time thereafter. Accordingly, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When presented with a motion to dismiss on the ground that the complaint "fail[s] to state a claim upon which relief can be granted," FED. R. CIV. P. 12(b)(6), the district court must accept as true the well-pleaded factual allegations contained in the complaint, *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 2064 (2010). Although "detailed factual allegations" are not necessary to withstand a motion to dismiss for failure to state a claim, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Id.* at 1950. When a complaint's well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," it has not shown that the pleader is entitled to relief. *Id.*

## III. DISCUSSION

### A.     *Defendants' Motion to Dismiss Is Fundamentally Infirm*

At the outset, the Court pauses to make an overarching observation about the nature of Defendants' Motion to Dismiss.  Although Defendants dutifully recite the legal standard governing this Court's review of a motion to dismiss, they consistently ignore that standard, setting forth their own version of the relevant facts and relying on that version in support of many of their legal arguments.[6]  *See* Defs.' Mem. at 2-4.  Often, their version of events directly contradicts the factual allegations set forth by Doe in her First Amended Complaint.  Simply by way of example, whereas Doe alleges that Defendants systematically isolated her from the outside world and prevented her from traveling outside the household alone for sixteen years, *see* Compl. ¶¶ 6, 28-30, 32-34, 36, 53, 101, Defendants contend that Doe "was, at all relevant times, given complete freedom of movement," Defs.' Mem. at 4.  Conspicuously absent from Defendants' moving papers is a single citation to Doe's First Amended Complaint.

It is hornbook law that, on a motion to dismiss, the court must accept as true the well-pleaded factual allegations in the complaint, and confine its consideration to those allegations (as well as documents incorporated in the complaint and matters of public record or of which the court may take judicial notice).  Inexplicably, Defendants have completely disregarded this fundamental premise in crafting their Motion to Dismiss.  The Court shall not belabor the point: Defendants' chosen approach is patently impermissible and a waste of the parties' and this Court's scarce time and resources.  The Court shall disregard Defendants' extraneous factual allegations and their legal arguments premised on those factual allegations.  These arguments include the following: (1) the contention that Doe's claims are barred by the doctrine of laches,

---

[6]  Even where Defendants set forth their own version of events, their account is supported only by the unsworn averments of their counsel.

*see* Defs.' Mem. at 6-7; (2) the contention that Doe's claim for breach of contract must fail because the applicable contract was between S. Siddig and Doe's father, *see id.* at 11; (3) the contention that Doe's claims for fraud and fraudulent inducement must fail because all of the communications were between S. Siddig and Doe's father, *see id.* at 14-15, 18; and (4) the contention that Doe's claim for negligence must fail because Defendants were unaware that she was a minor, *see id.* at 18-19.[7] Accordingly, the Court shall deny Defendants' Motion to Dismiss insofar as it is rests on those legal arguments.

> B.    *Defendants' Motion to Dismiss Will Be Denied Insofar as It Is Based on the Expiration of the Applicable Statutes of Limitations*

Defendants argue that Doe's claims for (1) breach of contract, (2) failure to pay statutory minimum wages in violation of the FLSA, (3) false imprisonment, (4) fraudulent inducement, (5) intentional infliction of emotional distress, and (6) negligent infliction of emotional distress are barred, in whole or in part, by the applicable statutes of limitations. *See* Defs.' Mem. at 11-12, 14-15, 17-18. Doe concedes that at least some of these claims would be barred, in whole or in part, if the statutes of limitations were strictly applied, but counters that each of the limitations periods should be equitably tolled until July 26, 2008, when she was first permitted to travel outside Virginia alone.[8] *See* Pl.'s Opp'n at 11-15. Upon consideration of the totality of the well-

---

[7] Even assuming, *arguendo*, the Court were inclined to consider the first of these arguments—Defendants' contention that all of Doe's claims are barred by the doctrine of laches—the Court would nonetheless conclude that Defendants have failed to carry their burden of proof on this affirmative defense. *See Pro-Football, Inc. v. Harjo*, 415 F.3d 44, 47 (D.C. Cir. 2005). In any event, resolution of Defendants' laches defense will have to await further development of the factual record so that the Court can assess the viability of Doe's countervailing argument based on the doctrine of equitable tolling. *See infra* Part III.B.

[8] Alternatively, Doe contends that the limitations period should be tolled until 2006, when she first left Defendants' household without supervision. *See* Pl.'s Opp'n at 15 n.6. Because Defendants have failed to respond to Doe's equitable tolling argument altogether, the Court has no occasion to resolve which of these dates would be more appropriate for tolling purposes. The

pleaded factual allegations in the First Amended Complaint, the Court concludes that Doe has

adduced enough factual content to render her equitable tolling argument sufficiently plausible to

allow her to proceed to discovery. *See Jones v. Rogers Mem'l Hosp.*, 442 F.2d 773, 775 (D.C.

Cir. 1971) (*per curiam*) (noting that the statute of limitations is an affirmative defense that

should not be decided on a motion to dismiss unless it is clear that plaintiff is not entitled to

relief); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (observing

that "[b]ecause the applicability of the doctrine of equitable tolling often depends on matters

outside the pleadings, it is not generally amenable to resolution on a [motion to dismiss].")

(internal quotation marks and citation omitted).  Indeed, as Doe correctly observes, several courts

have found the sort of factual allegations raised by Doe sufficient to invoke the doctrine of

equitable tolling. *See, e.g., Hernandez v. Attisha*, 2010 WL 8161660, at *1, 4-5 (S.D. Cal. Mar.

5, 2010); *Deressa v. Gobena*, 2006 WL 335629, at *1, 3-5 (E.D. Va. Feb. 13, 2006); *Wallace v.

Kato*, 549 U.S. 384, 389 (2007).  Absent any contrary argument from Defendants, the Court

considers it prudent to await additional development of the factual record before proceeding

further.  Therefore, the Court shall deny Defendants' Motion to Dismiss insofar as it seeks

dismissal of Doe's claims based upon the expiration of the applicable statutes of limitations.

One concluding observation is in order.  Due to Defendants' failure to file a reply in

support of their Motion to Dismiss, the legal briefing relevant to Doe's equitable tolling

argument has necessarily been one-sided.  The Court underscores that the legal issues raised by

Doe's argument are rather complex, and will require close attention from the parties in the

future.  At this point, the Court shall merely provide a non-exhaustive list of issues that will

likely need to be addressed in any future motion.  First, because some of Doe's claims arise

---

Court merely highlights the issue as one that will require the parties' attention upon further
development of the factual record.

under state law and others arise under federal law, the parties should be prepared to discuss how the relevant body of law (federal or state) affects Doe's equitable tolling argument. *Compare Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988), *and Doe I v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 34 (D.D.C. 2008), *with Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001). This task may be further complicated in this case because some of Doe's claims may require the Court to borrow the statute of limitations applicable to the closest state law analog. *See Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 485 (1980) (noting that the borrowing of a state statute of limitations "logically include[s]" borrowing the applicable tolling doctrine). Second, Doe's claim that "[i]t is well-established that the equitable tolling doctrine is read into every federal statute of limitations," Pl.'s Opp'n at 11, is not strictly accurate. Rather, "[i]t is hornbook law that limitations periods are *customarily* subject to equitable tolling . . . *unless* tolling would be inconsistent with the text of the relevant statute." *Young v. United States*, 535 U.S. 43, 49 (2002) (internal quotation marks and citations omitted) (emphasis added); *see also Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549, 2560 (2010) ("[A] nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable tolling.") (emphasis omitted). The parties should be prepared to discuss whether the application of the equitable tolling doctrine to any of Doe's statutory claims would be inconsistent with the underlying statute. Third, because it is alleged that S. Siddig was an official or employee of the Sudanese Embassy in Washington, D.C., at all times relevant to this action, the parties should be prepared to discuss the impact of any diplomatic immunity on the running of the statutes of limitations. *See, e.g.*, *Gonzales Paredes v. Vila*, 479 F. Supp. 2d 187, 189 n.2 (D.D.C. 2007); *Hilao v. Estate of Ferdinand Marcos*, 103 F.3d 767, 776 (9th Cir. 1996). The Court merely flags these issues for the parties. They raise questions for another day.

C.  *Defendants' Motion to Dismiss Will Be Granted-in-Part and Denied-in-Part*
    *Insofar as it Seeks Dismissal of Doe's Claim for Involuntary Servitude*

Defendants tender three arguments as to why Doe's claim for involuntary servitude under

the Thirteenth Amendment of the Constitution of the United States and 18 U.S.C. § 1584

("Section 1584") should be dismissed. The Court addresses each argument in turn.

First, Defendants argue that Section 1584 is a criminal statute and does not create a

private right of action. *See* Defs.' Mem at 7. While that is undeniably true, 18 U.S.C. § 1595

("Section 1595") expressly provides a private right of action for violations of Section 1584.

Accordingly, Defendants' first argument is without merit.

Second, citing retroactivity concerns, Defendants argue that Doe's claim for involuntary

servitude based on violations of Section 1584 should be "limited to the date of [the statute's]

enactment." Defs.' Mem. at 8. Section 1584 has imposed criminal liability on persons

responsible for involuntary servitude since 1948, long before the events in question in this action

are alleged to have transpired. However, Congress did not amend Section 1595 to create a

private right of action for violations of Section 1584 until December 23, 2008. Despite Doe's

arguments to the contrary, *see* Pl.'s Opp'n at 17, this represented a significant expansion of civil

liability—"an important legal consequence that cannot be ignored." *Landgraf v. USI Film*

*Prods.*, 511 U.S. 244, 283-84 (1994). Permitting private litigants to invoke Section 1595 to seek

relief for violations of Section 1584 predating December 23, 2008 would undoubtedly "increase

a party's liability for past conduct." *Id.* at 281; *see also Hughes Aircraft Co. v. United States*,

520 U.S. 939, 950 (1997) (concluding that an amendment to a statute "permitting actions by an

expanded universe of plaintiffs with different incentives" was subject to the presumption against

retroactivity). Therefore, and because there is no clear congressional intent favoring retroactive

application, the Court shall dismiss Doe's claim for involuntary servitude under Sections 1584

and 1595 insofar as it is predicated on acts predating December 23, 2008. *Cf. Nattah v. Bush*, 2011 WL 938670, at *9 (D.D.C. Mar. 18, 2011) (concluding that Section 1595 "cannot be applied retroactively."). Doe may nonetheless pursue such a claim for conduct occurring between December 23, 2008 and her alleged "escape" from Defendants' control on or about August 7, 2009.

Third, and finally, Defendants contend that Doe cannot seek relief for involuntary servitude pursuant to an implied cause of action under the Thirteenth Amendment to the Constitution of the United States. *See* Defs.' Mem. at 7-8. In this regard, Defendants concede that there may be a private right of action under the Thirteenth Amendment, but maintain that such a right is limited to violations committed by state actors or involving class-based discrimination. *See* Defs.' Mem. at 7-8. Defendants' concession is an overly generous one. Courts in this Circuit have consistently held that there is no private right of action under the Thirteenth Amendment. *See* Mem. Op. at 7 ("[T]he Thirteenth Amendment does not provide a direct cause of action. A plaintiff asserting a claim grounded on the Thirteenth Amendment must prosecute her claim via a statutory remedy . . . ."), *Richardson v. Loyola Coll.*, Civil Action No. 02-1597 (HHK) (D.D.C. Aug. 14, 2003), ECF No. [19], *aff'd sub nom. Richardson v. Loyola Coll. in Md., Inc.*, 167 F. App'x 223, 225 (D.C. Cir. 2005) (*per curiam*) ("[T]he Thirteenth Amendment does not provide an independent cause of action for discrimination."); *Nattah*, 770 F. Supp. 2d at 204 ("Neither the Thirteenth Amendment nor the TVPA creates a private right of action upon which recover [sic] may be had in a civil suit."); *Holland v. Bd. of Trustees of Univ. of D.C.*, 794 F. Supp. 420, 424 (D.D.C. 1992) ("[T]he Thirteenth Amendment does not give rise to an independent cause of action."). This approach is consistent with the general disfavor towards implied causes of action, *see Iqbal*, 129 S. Ct. at 1948, and the fact that Congress has

already brought its institutional competence to bear on the matter by crafting an appropriate statutory right of action in the form of Sections 1584 and 1595. But even assuming, *arguendo*, that such a cause of action existed, the Court agrees that it would not extend to a suit brought by "one private individual" against "another private individual" where, as here, the complaint is "devoid [of allegations] of state action or class-based discrimination." *Bhagwanani v. Howard Univ.*, 355 F. Supp. 2d 294, 302 (D.D.C. 2005). Accordingly, the Court shall grant Defendants' Motion to Dismiss insofar as it seeks dismissal of Doe's claim for involuntary servitude based on an implied cause of action under the Thirteenth Amendment.

In sum, the Court concludes that Doe may pursue a claim for involuntary servitude only under Sections 1584 and 1595 and only for conduct occurring between December 23, 2008 and her alleged "escape" from Defendants' control on or about August 7, 2009.

### D. Defendants' Motion to Dismiss Will be Granted-in-Part and Denied-in-Part Insofar as it Seeks Dismissal of Doe's Claims Under the TVPA

Defendants similarly argue that Doe's claim for trafficking for purposes of forced labor under the TVPA, 18 U.S.C. § 1590 ("Section 1590"), and her claim for forced labor under the TVPA, 18 U.S.C. § 1589 ("Section 1589"), should be dismissed based on retroactivity concerns. *See* Defs.' Mem. at 9-11. Congress enacted Section 1595 to create a private right of action for violations of Sections 1589 and 1590 on December 19, 2003. Despite Doe's arguments to the contrary, *see* Pl.'s Opp'n at 19-21, the Court concludes that permitting private litigants to bring suit under Section 1595 for violations of Sections 1589 and 1590 based on conduct predating December 19, 2003 would have an impermissible retroactive effect, one that this Court declines to endorse absent an affirmative contrary expression of intent from Congress. Accordingly, the Court shall grant Defendants' Motion to Dismiss insofar as it seeks dismissal of Doe's claims for forced labor and trafficking for purposes of forced labor insofar as those claims are predicated on

acts predating December 19, 2003. Nonetheless, Doe may pursue such claims insofar as they relate to conduct occurring between December 19, 2003 and Doe's "escape" from Defendants' control on or about August 7, 2009.

The Court rejects Defendants' separate argument that Doe has failed to adduce sufficient facts to state a plausible claim that they violated Sections 1589 and 1590, an argument that is made without any meaningful reference to the statutory text or the allegations set forth in the First Amended Complaint. *See* Defs.' Mem. at 9-10. Doe has provided sufficient factual content to state a plausible claim under Section 1595 for violations of Sections 1589 and 1590.

In sum, the Court shall deny Defendants' Motion to Dismiss Doe's claims for forced labor and trafficking for purposes of forced labor except insofar as those claims are predicated on acts predating December 19, 2003. Doe may pursue such claims insofar as they relate to conduct occurring between December 19, 2003 and August 7, 2009.

E.    *Defendants' Motion to Dismiss Will Be Denied Insofar as It Seeks Dismissal of Doe's FLSA Claim*

Defendants assert that Doe's claim under the FLSA must be dismissed because her allegations that she was denied the statutory minimum wage are conclusory. *See* Defs.' Mem. at 12. Specifically, Defendants fault Doe for "mak[ing] no effort to quantify monetary wages she earned plus the non-monetary wages (room, board, and other benefits)" she allegedly received. *Id.* But Defendants cite to no legal authority that would support their implication that an FLSA plaintiff must affirmatively plead such non-monetary offsets in order to state a claim for relief. Meanwhile, Doe specifically alleges that she received $100 per month, approximately $3.33 per day, from 1990 until 1999 or 2000; $150 per month, approximately $5 per day, from 1999 or 2000 until 2006; and $200 per month, approximately $6.66 per day, from 2006 until 2009. Compl. ¶ 3. These figures are *substantially* below the federal minimum wage rates during the

relevant time period. Doe has met the liberal pleading requirements imposed by the Federal Rules of Civil Procedure. Accordingly, Defendants' Motion to Dismiss will be denied insofar as it seeks dismissal of Doe's FLSA claim.

> F. *Defendants' Motion to Dismiss Will Be Denied Insofar as It Seeks Dismissal of Doe's Claim for False Imprisonment*

Defendants claim that Doe's claim for false imprisonment must be dismissed because Doe has "failed to plead direct restraint at the hands of Defendant [sic] which restrained [her] physical liberty and there existed no legal justification." Defs.' Mem. at 14. However, Defendants' implication that a plaintiff must allege a direct physical restraint in order to recover for false imprisonment is misplaced. Under Virginia law, which the parties agree applies to Doe's false imprisonment claim, it is sufficient that the defendant used "force, words, or acts" of which the plaintiff was "afraid to ignore or to which [she] reasonably believe[d] [she] must submit." *Zahand v. United Airlines Inc.*, 1994 WL 1031381, at *3 (Va. Cir. Ct. 1994). In other words, Virginia has eschewed the so-called "stone walls and iron bars" approach to false imprisonment. Upon consideration of the totality of the well-pleaded factual allegations in the First Amended Complaint, the Court concludes that Doe has adduced enough factual content to render her false imprisonment claim sufficiently plausible to allow her to proceed to discovery.

> G. *Defendants' Motion to Dismiss Will Be Denied Insofar as It Seeks Dismissal of Doe's Claims for Unjust Enrichment and Quantum Meruit*

Defendants contend that Doe's claims for unjust enrichment and quantum meruit must be dismissed because she "makes no effort to quantify" her monetary and non-monetary wages. Defs.' Mem. at 15, 17. However, Doe is not required to plead with particularity damages that would typically be expected to flow from her claims. *See* FED. R. CIV. P. 8(a)(3), 9(g); *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002). She has set forth sufficient facts to render it plausible that Defendants unjustly benefited from her services by failing to pay for the

reasonable value of the services provided. Accordingly, the Court shall deny Defendants' Motion to Dismiss insofar as it seeks dismissal of Doe's unjust enrichment and quantum meruit claims.

>    *H.    Defendants' Motion to Dismiss Will Be Denied Insofar as It Seeks Dismissal of Doe's Claim for Negligence*

Lastly, Defendants argue that Doe's negligence claim must fail because they owed Doe "nothing more than [an] ordinary duty of care." Defs.' Mem. at 18. Defendants cite to no legal authority in support of their position nor make any attempt to correlate their argument to the factual allegations set forth in the First Amended Complaint. Such an argument hardly warrants serious attention; courts need not resolve arguments raised in a cursory manner and with only the most bare-bones arguments in support. *See Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997). In any event, Defendants' argument is predicated upon factual allegations extraneous to the First Amended Complaint—namely, their contention that they were unaware that Doe was a minor at the time she began working in their household. Defs.' Mem. at 18-19. Finally, Defendants offer no rejoinder to Doe's argument that "even if [they] are correct that they did not owe [her] a heightened duty of care," her allegations are sufficient to raise a question as to whether they "exercised that degree of care that [an] ordinarily prudent person would exercise under the same or similar circumstances." Pl.'s Opp'n at 40. Accordingly, the Court shall deny Defendants' Motion to Dismiss insofar as it seeks dismissal of Doe's claim for negligence.

## IV. CONCLUSION

For the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART Defendants' [18] Motion to Dismiss. Specifically, the motion shall be GRANTED insofar as Defendants seek dismissal of (a) Doe's claim for involuntary servitude under Sections 1584 and

1595 to the extent her claim is based on acts predating December 23, 2008, (b) Doe's claim for involuntary servitude under the Thirteenth Amendment, regardless of the dates of the underlying conduct, (c) Doe's claim for trafficking for purposes of forced labor under Sections 1590 and 1595 to the extent her claim is based on acts predating December 19, 2003, and (d) Doe's claim for forced labor under Sections 1589 and 1595 to the extent her claim is based on acts predating December 19, 2003. The motion shall otherwise be DENIED, including with respect to (a) Doe's claim for involuntary servitude under Sections 1584 and 1595 for conduct occurring between December 23, 2008 and August 7, 2009, (b) Doe's claim for trafficking for purposes of forced labor under Sections 1590 and 1595 to the extent her claim is based on conduct occurring between December 19, 2003 and August 7, 2009, and (c) Doe's claim for forced labor under Sections 1589 and 1595 to the extent her claim is based on conduct occurring between December 19, 2003 and August 7, 2009. Defendants shall serve and file their Answer to the First Amended Complaint by no later than September 28, 2011. An appropriate Order accompanies this Memorandum Opinion.

Dated: September 12, 2011

**COLLEEN KOLLAR-KOTELLY**
United States District Judge